## MURRAY v. NORTHWESTERN R. R. CO.

1. DEED—EVIDENCE—PAROL.—The covenant in a deed to "establish and maintain a freight and passenger depot" may be explained by parol evidence, so as to arrive at what was in the minds of the contracting parties at the time of its execution.

2. SPECIFIC PERFORMANCE—DECREE.—COURT OF EQUITY will decree the specific performance of a covenant in a deed to a railroad company to "establish and maintain a freight and passenger depot," where such covenant is a part of the consideration of the deed and the building is to be erected on lands thereby conveyed to and thereunder in possession of the company, and the decree herein directing specific performance is not indefinite.

Before HUDSON, special Judge, Sumter, December, 1901. Affirmed.

Action by Geo. W. Murray against Northwestern Railroad Company. The following is the Circuit decree:

"This case came before me at a special term held for Sumter County, in the week beginning 16th of December, 1901, on exceptions by both plaintiff and defendant to the master's report, to whom all the issues had been referred.

"The plaintiff owned a large tract of land in Sumter County, which was crossed by the selected route of the Northwestern Railroad from Sumter to Camden, and upon

which the defendant had entered for the purpose of grading and track-laying. Disputes arose between Murray and the railroad company, followed by litigation. Murray and certain of his tenants filed petitions for compensation under the right of way statutes, and others were threatened, when the railroad company brought their action to restrain those proceedings, alleging that Murray had given his consent to the occupation of his land by this railroad upon the company's undertaking to establish a station and erect a depot at a point on Murray's land to be called Borden.

"The complaint in the action of the Northwestern Railroad Company against George W. Murray and others, verified by Thomas Wilson, president, alleged that Murray had agreed to let the railroad company have a right of way through his lands, and one acre of land for depot purposes, in consideration of $150 in money and the company's agreement to establish a railway station or depot thereon, and that in part performance of said contract the railroad company had purchased and paid for the necessary lumber and building materials for the erection of the necessary station house, depot and other structures, and caused the same to be placed alongside the said railroad, and was in the prosecution of the completion of said work when the plaintiff was interfered with by the legal proceedings hereinafter referred to.

"On the return to the rule to show cause before Judge Townsend, affidavits by Thomas Wilson and C. C. Dunn were read in the hearing of George W. Murray. Wilson, president, stated in his affidavit 'that the deponent, acting for said company and in the further pursuance of said contract and agreement * * * had purchased and paid for the necessary lumber wherewith to erect said depot and station house, and was about to commence the same when the aforesaid restraining order was served.' C. C. Dunn, superintendent of construction of this road, stated in his affidavit, dated 3d of March, 1900, 'that acting under the instructions of said company, he made out and delivered to Messrs. Seals and

Carson, manufacturers of lumber, a bill of lumber for the frame work of the depot at Borden, and pointed out the location to the said Seals and Carson where said station was to be established and said lumber used; that this occurred some six weeks or two months ago, since which time the foresaid lumber has been cut and delivered alongside of said railroad, and the same paid for.' Testimony taken before the master in this case now under consideration shows that this lumber was cut and delivered for a depot at Borden of the same plan and dimensions as the depot at Dalzell, the nearest station towards Sumter, and a contract made with a builder to erect a depot at Borden like that at Dalzell. Moreover, that there was an agent of the company at Borden, as there was at Dalzell, discharging the duties of station agent for the sale of tickets and the receipt and delivery of freight, such agent at Borden occupying a box car for these purposes. All these things being known to Murray and the railroad company, and this condition of things still existing, on the 5th of May, 1900, subsequent to Judge Townsend's order granting the interlocutory injunction prayed for by the railroad company, and in settlement of all litigation between the parties then pending, Murray made, and the railroad company accepted, a deed of that date, whereby Murray and his tenants conveyed to the railroad company a lot of land for depot purposes at Borden and a right of way across his lands. This deed was made upon the consideration of $150 in money and 'the covenant and agreement' of the railroad company 'to establish and maintain a freight and passenger depot' at Borden. This deed contains the further stipulations: 'And it is expressly covenanted and agreed that the consideration money hereinbefore named and the condition of the establishment and maintenance of the said freight and passenger depot at said station called Borden by the grantee, its successors and assigns, is in full payment, satisfaction and compensation for the aforesaid right of way and easement over and through the said tracts of land above described and also the aforesaid one acre plot

of ground, and including all special injury and damage past, present or future, suffered or to be suffered by the grantors hereof, or their heirs, executors, administrators and assigns, from or by reason of the construction and operation of said railroad over and upon the aforesaid premises. And it is further covenanted and agreed that in the event that the said Northwestern Railroad Company, its successors or assigns, shall not establish a passenger and freight station at said place called Borden, or having established such station shall cease to maintain the same, then and in that event the right of way and easement hereby granted shall revert to the grantor, George W. Murray, above named.' The company paid to Murray the money consideration called for, and have held the depot lot and right of way ever since, and still use the latter as a part of their railroad line between Sumter and Camden. But soon after the acceptance of this deed, the company changed its plans, removed its present agent, otherwise disposed of the lumber so cut and delivered for the Borden depot, made Borden a prepay flag station, procured a merchant there to act as agent to the extent of keeping its so-called depot locked and of delivering freight, without authority to receive freight or sell tickets, and erected a building ruder and smaller than that which was in contemplation when the deed was delivered, and with no accommodation for passengers other than an open uncovered platform without seats. The depot at Remberts, next beyond Borden from Sumter, was afterwards built just like the one at Dalzell.

"The plaintiff in this case prays for a specific performance of the contract made by his deed and the acceptance thereof, and for damages for the defendant's delay, or that the value of the property so held by the railroad company be adjudged to him for the failure of the defendant to erect and maintain such depot accommodations at Borden as were contemplated by the parties. Defendant contends that the phrase 'freight and passenger depot' means such a depot as would answer the demands of freight and passenger traffic

at that point, and that parol testimony is inadmissible to reform the deed or to vary or add to the deed.    But I hold that parol testimony is admissible of such facts as will show that the surrounding circumstances at the time, and so reach the meaning of that phrase as understood by both grantor and grantee, under which the railroad company acquired its long right of way.    Therefore, the master properly received and considered the facts above recited, and in the light of those facts properly held that a freight and passenger depot at Borden meant accommodations equal to those at Dalzell, and, I will add, equal to those at Remberts.    The contract being thus certain, definite and specific, and the depot accommodations at Borden not being such as the deed called for, the next question is, can the defendant be required to specifically perform its contract, and so discharge the consideration for which it obtained the property rights so acquired and now held.    Upon this question there may be some conflict of authority.    I have been referred to no case from the Courts of this State that decides this point, in my judgment.    But it seems to me that specific performance should be decreed, and that it would not be proper to permit the defendant to accept all of the rights acquired by it under this agreement, and withhold the mandate of the Court requiring it to perform its part of this same agreement.    I find strong authority in support of this conclusion.    In *Storer* v. *Railroad Company*, 2 Y. & C. N. R., 48, the Court compelled the defendant to construct and maintain an archway and its approaches, the Court saying there was no difficulty in enforcing such decrees.    In 2 Beach Modern Law of Contracts, sec. 883, the author says: "The rule is not universal that courts of equity will never assume jurisdiction to enforce a contract which requires some building to be done, they have enforced such contracts from the earliest days to the present time,' citing in note 3 several such cases.    Lewis on Eminent Domain, sec. 296, says, 'agreements by a railroad company to build crossings or fences, or to locate and build a depot, or to do other things

for the benefit of the grantor, may be specifically enforced.'
In *Stuyvesant* v. *Mayor of New York,* LL., page 426, there
was a grant of land on the condition that the city of New
York should make certain improvements. Chan. Wal-
worth thus declared the law: 'The true rule on the subject
of decreeing the specific performance of a covenant in such
cases, is that where, from the nature of the relief sought,
performance in specie will alone answer the purpose of
justice, this Court will compel a specific performance, in-
stead of leaving the complainant to a remedy at law, which
is wholly inadequate. The Court has jurisdiction, there-
fore, to compel the specific performance, by the defendant,
of a covenant to do specified work, or to make certain im-
provements or erections upon his own land for the benefit
of the complainant, as the owner of the adjoining property,
who has an interest in having such work done, or such im-
provements or erections made, and where the injury to the
complainant from the breach of covenant is of such nature
as not to be capable of being adequately compensated in
damages.' In the case of *Ross* v. *Union Pacific Railroad
Company,* 1 Woolw., 37, the Court refused to direct specific
performance of a contract for the construction of a railroad
which would require years to be completed. But in that
case, Mr. Justice Miller reviews the cases, citing *Errington*
v. *Ayneely,* 2 Brown Ch., 341, and *Lucas* v. *Comeford,* 3
Br. Ch. and 1 Vesey Jt., 255, where the Court refused to
order specific performances because 'if one person would
not build, another might be found who would,' and because
the Court could not undertake to superintend the construc-
tion of a building. Judge Miller then calls attention to
several cases where specific performance was decreed of a
contract by a railroad company in consideration of a right
of way 'to make an arched way under its road bed' (*Storer*
v. *G. W. R. Co.,* 2 Y. & C., 48) ; in consideration of a sale
of land to build a street and erect a fish market (*Prince* v.
*Ponzence,* 4 Hare, 506) ; for the grant of a piece of land for
a park, a contract to grade, inclose and improve the premises

(*Stuyvesant* v. *N. Y. City,* LL., page 414); to complete a hotel (*Burchette* v. *Boling,* 5 Mumf., 442). And Judge Miller calls attention to the fact, that in these latter cases, 'the building was to be done on the land of the person who agreed to do it;' 'the consideration of the agreement was the sale or conveyance of the land on which the building was to be erected, and the plaintiff had already, by such conveyance on his part, executed the contract, and the building was in some way essential to the use or contributory to the value of adjoining land belonging to the plaintiff,' all of which conditions exist in this case. Other authorities in the master's report and in the argument submitted to me by counsel for plaintiff, seem to support the view I have taken. It is a definite and certain contract, the consideration for which defendant received and now enjoys; and unless defendant perform his undertaking to build a freight and passenger depot, as understood by the parties, it will be impossible for the plaintiff to get that in exchange for which he granted the right of way. Nor can I see any difficulty in carrying out a decree for the specific performance of defendant's agreement.

"I further hold that no damages should be decreed to plaintiff for the delay up to this time in establishing and maintaining the proper depot accommodations at Borden required by the deed. The pecuniary damage to plaintiff does not appear to me to be serious, and the railroad is now and has been in operation less than a year when this action was commenced.

"It is, therefore, ordered and decreed, that plaintiff's fourth exception to the master's report be sustained and the others overruled; that so much of defendant's fifth and sixth exceptions as charges error to the master in awarding $500 damages to the plaintiff, be sustained, and its others overruled; and that the master's report, with these changes and modifications, be confirmed.

"It is further ordered and decreed, that the defendant do cause to be erected by May 1, 1902, a freight and passenger

depot at Borden, like to that now at Dalzell, a station on its road, with like facilities for the receipt and delivery of freight and for the convenience and accommodation of passengers.

"Let notice of the filing of this decree with a copy of its directions be served forthwith on the defendant or its attorneys."

The defendant appeals on the following exceptions:

"1. Because his Honor erred, it is respectfully submitted, in not construing the alleged contract set up in the complaint by its terms alone, and without resorting to parol and extrinsic evidence.

"2. Because his Honor erred, it is respectfully submitted, in receiving and considering extrinsic and parol evidence in determining the meaning and effect of the contract set up in the complaint as the basis of the plaintiff's action, and in that he did not confine himself alone to the terms employed by the grantor in his said deed.

"3. Because his Honor erred, it is respectfully submitted, in holding and deciding as follows: 'But I hold that parol testimony is admissible of such facts as will show the surrounding circumstances at the time, and so reach the meaning of that phrase 'freight and passenger depot,' as understood by both grantor and grantee * * * and in further holding 'that a freight and passenger depot at Borden meant accommodations equal to those at Dalzell, and I will add, equal to those at Remberts,' for that thereby his Honor permitted the deed of the plaintiff to be added to, enlarged and varied by parol testimony, and in effect constituted a new and different contract from that set out in the complaint.

"4. Because his Honor erred, it is respectfully submitted, in not sustaining defendant's first exception to the master's report and in overruling the same; said first exception being as follows: 'Because the master erred in admitting parol testimony to explain the plaintiff's deed set out in the com-

plaint as a basis of plaintiff's action, and to add to the same by extending and enlarging the terms of the alleged contract of the defendant therein set forth; and in effect making a new contract for the parties to the same, and in finding that a depot such as existed at Dalzell, another station on said railroad, should have been built and maintained by defendant at Borden; in that thereby the master permitted the plaintiff by parol to add to, vary and enlarge and explain an instrument in writing, the terms of which are plain and unambiguous; and in that he thereby disregarded the rule of the law that the said deed should be taken most strongly against the grantor therein; and in that he thereby disregarded the further rule of the law, that in actions for the specific performance of contracts, it is the duty of plaintiffs to show and prove a contract on the part of defendant, clear and definite in its terms; and furthermore, because the records of the previous action and other evidence thus erroneously admitted in testimony related to the establishment of the station at Borden, on the line of said railroad, and not to any particular kind of depot, for that thereby the written contract set up in the complaint was allowed by the Court by the aid of parol testimony to be varied, added to and explained, and in effect a new and different contract to be made out and established as the contract of the parties to the cause.'

"5. Because his Honor erred, it is respectfully submitted, in holding and deciding as follows: 'It is further ordered and decreed, that the defendant do cause to be erected * * * a freight and passenger depot at Borden like to that now at Dalzell * * * with like facilities for the receipt and the delivery of freight and for the convenience and the accommodation of passengers,' for that such holding is not warranted by the terms of the deed set up in the complaint, and the terms of said deed could not lawfully be added to and enlarged by parol testimony.

"6. Because his Honor erred, it is respectfully submitted, in overruling the defendant's second exception to the

master's report, as follows: 'Because the master erred in
finding that defendant had not established and did not
maintain a freight and passenger station and depot at Bor-
den on the line of said railroad; and in that he should have
found the contrary, and should have found the defendant
had established and was maintaining in every day use a
freight and passenger station and depot at Borden.    That
four trains stopped at Borden every day when necessary to
receive and discharge all freight and passengers destined
to or from that station; that the trains on said railroad ran
only in the daytime; that the said station was duly entered
upon all the time tables and schedules of the defendant
company; that the hours for the daily arrival and departure
of all of the defendant's trains at Borden were duly pub-
lished in the newspapers of the county and full notice of
same given to the public.    That passenger tickets to the
station called Borden were regularly kept on sale, and were
habitually sold to all passengers requiring the same; that
all freight destined for Borden was duly received by the
defendant, transported to and delivered to the consignees
thereof at said point; that regular bills of lading were
issued to that station for all freight shipped thereto; that
bills of lading were duly issued at Borden for all freight
shipped from that point; that the plaintiff himself had
shipped freight from said station; that a duly appointed
agent of the defendant company was located there; that one
Samuel Folk, a member of the firm of R. C. Folk & Co.,
merchants doing business at Borden, and located a few
yards from the depot building, was the duly appointed agent
of the defendant company at Borden and had charge of its
depot there; that the defendant had erected and was habitu-
ally using a serviceable and substantial building immedi-
ately along its side track at Borden, consisting of one full
size room for freight and passengers, with an overhanging
shed to same, with platforms adjoining the same, and also
a standard umbrella shed for the greater convenience of
passengers and other structures, was ample for the accom-

34—64

modation of all freight and passengers at said depot; that said depot and other structures were much more complete and commodious than the facilities established at other stations on said railroad doing a very much larger business than at Borden; that said station called Borden was situated in the back country, surrounded by plaintiff's property, and with no public roads leading to the same; that the business at said station called Borden did not average one passenger a day, and only a very small volume of freight; that ample depot room and facilities had been established and was being maintained by the defendant at Borden, and that the defendant company had substantially and for all practical purposes complied with and performed its agreement as set forth in said deed.' And from the facts found by the master and the Circuit Judge, he should have held that the defendant had complied with the terms of said deed, and had erected and was maintaining a freight and passenger depot at the station called Borden.

"7. Because neither the contract set up in the complaint nor the parol testimony, warranted the Court in ordering 'that the defendant do cause to be erected * * * a freight and passenger depot at Borden like that now at Dalzell * * * with like facilities for the receipt and delivery of freight and for the convenience and accommodation of passengers.' And his Honor erred in so holding, for that such order and decree involves and requires, *inter alia,* the employment and retension of a resident freight and passenger agent at Borden, a telegraphic operator there, the keeping of tickets on sale, and other like matters not within the contract of the parties to the action.

"8. Because his Honor erred, it is respectfully submitted, in holding and deciding that the contract set up in the complaint, to wit: the contract to 'erect and maintain a freight and passenger depot at the station called Borden was one capable of being enforced by the court of equity—for that such a contract requires the perpetual supervision of the Court, is wholly inconsistent with the functions of the court

of equity, and is incapable of specific performance under its decree.' And his Honor erred in not so deciding.

"9. Because that in ordering and decreeing that the defendant 'do cause to be erected * * * a freight and passenger depot at Borden like that now at Dalzell, * * * with like facilities for the receipt and delivery of freight and for the convenience and accommodation of passengers,' the Court exceeded its jurisdiction, for that the contract set up in the complaint is one in perpetuity, is incapable of being specifically performed, and the remedy of the plaintiff is an action at law for damages, and his Honor erred in not so holding and deciding.

"10. Because his Honor erred, it is respectfully submitted, in sustaining the plaintiff's fourth exception to the master's report, as follows : 'Because the master held, as a conclusion of law, that the contract between plaintiff and defendant was such a contract as a court of equity cannot enforce.' And his Honor should have overruled said exception and sustained the master's report in that respect, for that said contract is one in perpetuity, requiring the constant supervision of the Court, is wholly inconsistent with its functions, and is incapable of being specifically performed under its decree.

"11. Because his Honor erred, it is respectfully submitted, in not holding and deciding as matter of law, 'that the contract between the plaintiff and the defendant was such a contract as the court of equity cannot enforce.'

"12. Because the said decree is indefinite, inconclusive and uncertain, in that neither the report of the master nor the decree of the Court defines or describes with particularity the depot directed to be constructed."

*Messrs. Lee & Moise,* for appellant, cite: *Deed is plain and needs no interpretation by parol:* 4 Strob., 208; 2 Hill, 439; 5 Ency., 622; 37 Conn., 153; 128 Ill., 171; 45 N. Y., 514; 38 S. C., 1, 429; 56 S. C., 260; 53 S. C., 483; 61 S. C., 532; 27 S. C., 348; 42 S. C., 312; 52 S. C., 136; 19 S. C.,

445; 16 S. C., 352; 26 S. C., 312; 27 S. C., 324.  *Equity
will not decree erection of depot, &c.:* 22 Ency., 996; 136
U. S., 393; 77 U. S., 339; 138 U. S., 51; 5 Rich. Eq., 289;
32 S. C., 203; Pierce on R. R., 139; 2 Mor. on Private
Corp., sec. 1134, and notes; 3 Pom. Eq. Jur., sec. 1402, and
note; 1 Pom. Eq. Jur., 469; 5 Ency., 380, 390; 3 Ency.,
780, 784, 786.  *Decree too indefinite: Florida R. R. v. State
of Florida,* 20 L. R. A.

*Messrs. Moise & Clifton* and *R. W. Shand,* contra.  *Mr.
Shand* cites: *As to the admissibility of the parol evidence in
regard to the terms of the deed:* Abb. Trial Ev., 294; 2
Jones Ev., 455, 458, 462, 476; 15 S. C., 612; 7 Ency., 21,
23; 1 Story, 588; 8 Wall, 1; 19 Wall, 548; 1 Am. R., 85;
54 S. C., 594; 2 Hill Ch., *563; 2 Hill, 405; 18 S. W. R.,
1030; 6 Ency., 2 ed., 768-772; 53 S. C., 487; 1 McC., 516.
*Sixth exception is too general:* Code, 290; 14 S. C., 178; 24
S. C., 280; 37 S. C., 240; 40 S. C., 80; 42 S. C., 282.  *As
to the jurisdiction of Court to make the order of specific
performance:* 22 Ency., 996, 997; 1 Woolw., 40; 2 Brown
Ch., 341, *235; 2 Y. & C., 48; 4 Hare, 506; 11 Paige, 414;
5 Mumf., 442; Lewis Em. Dom., 1 ed., sec. 296; 63 Mo.,
68; 26 Barb., 289; 36 Hun., 467; Bisham's Prin. Eq., 6 ed.,
501; 5 S. C., 255; Waterman Spec. Perf. Con., secs. 28, 29,
144; 2 Ell. R. R., sec. 386; 144 N. Y., 152; 38 L. R. A.,
820; 138 U. S., 46; 2 Beach. Mod. Law Con., sec. 883, and
note 2; Fry on Spec. Per., sec. 209.

October 17, 1902.  The opinion of the Court was deliv-
ered by

Mr. Justice Pope.  The object of plaintiff's action was
to require the defendant to specifically perform its agree-
ment to erect a proper depot at a station called "Borden"
on its railroad, on the acre of land conveyed by plaintiff to
the defendant by deed, and to have defendant pay to plain-
tiff $1,000 for damages for defendant's failure to do so at
an earlier date, or, that upon its failure to erect said depot,

the defendant shall be required to pay to plaintiff the sum of $14,850 as damages for breach of its contract. The defendant denied, by its answer, that plaintiff was entitled to any relief as prayed for. All the issues of law and fact were referred to the master, H. F. Wilson, Esq., who after taking a great deal of testimony and after full argument, reported that (referring to the deed executed by plaintiff and others to the defendant on the 5th May, 1900) :

"At the time of the execution of said deed there was some litigation pending between the plaintiff and defendant relating to compensation for the lands of the plaintiff then being occupied by defendant for its right of way. In compromise, adjustment and settlement of this litigation, the said deed was executed by the said George W. Murray and others and accepted by the said defendant company, who produced it under notice in this case. The consideration set out in said deed is as follows : 'For and in consideration of the sum of $150 to us in hand paid by the Northwestern Railroad Company of South Carolina, a railroad corporation duly chartered under the laws of said State, and its covenant and agreement to establish and maintain a freight and passenger depot at á station called "Borden," on said railroad, in said county.' There is also the further stipulation set out in said deed, 'And it is further covenanted and agreed that in the event that the said Northwestern Railroad Company, its successors or assigns, shall not establish a freight and passenger station at said place called "Borden," or having established such station shall cease to maintain the same, then and in that event the right of way and easement hereby granted shall revert to the grantor, George W. Murray, above named.'

"It is conceded that the $150 was paid to the said plaintiff by the said defendant, but it is contended that the freight and passenger depot has not been established and maintained at the station called 'Borden,' and it is for the specific performance of this part of the agreement that this action is brought and for damages for such non-perform-

ance of the contract. The defendant contends that the terms of the contract have been complied with. Some of the witnesses for the defendant testify that there are many kinds of depots and stations—from a mere flag station, where there are no buildings at all, only a place usually a public highway crossing or a railroad side track, where passengers or freight or both are put off and taken on, and where there is no agent to attend to the company's business, to the most modern depot with all its equipments and conveniences—and that the expression in the deed above referred to, 'freight and passenger depot,' might mean either the one or the other or any intermediate kind. The plaintiff offered parol testimony to explain the meaning of the expression used in said deed, 'freight and passenger depot,' and to show what kind of a 'freight and passenger depot' was intended by the parties plaintiff and defendant at the time the said deed was executed and delivered by the plaintiff and received by the defendant. I allowed this testimony to come under the authority of the case of *Raply* v. *Klugh,* 40 S. C., p. 145, and other authorities cited by plaintiff. This parol testimony showed that the 'freight and passenger depot' to be established and maintained at the station called 'Borden' was to be similar 'to the freight and passenger depot' then established and being maintained with a resident freight and passenger agent at a station called 'Dalzell,' on said railroad, some five miles from the said station called 'Borden.' That soon after the execution of said deed the defendant company built at the station called 'Borden' a freight wareroom some 15 feet by 16 feet in dimensions, with platforms extending the length of same in front and rear, such platforms being six feet wide. That subsequent to the commencement of this action the said defendant company built at the station called 'Borden' an 'umbrella shed' for the accommodation of passengers. That the station called 'Borden' was known as a flag station, where trains only stop upon signal or for the discharge of passengers or freight. That tickets were sold to the said

station called 'Borden' from other points, and that freight, when the charges were prepaid, was billed to 'Borden,' but that no tickets were sold at 'Borden' for other points. That there was no resident bonded agent of the defendant company at 'Borden,' some arrangements having been made with Mr. Folk, who kept a store a few yards from the said wareroom, when there to deliver freight to parties calling for same. This service was paid for by defendant company by a free pass over its said road. The testimony also shows that the plaintiff, George W. Murray, has bought out all the reversionary interests of the parties (other than himself) who signed the deed above referred to and marked in evidence exhibit 'S.'

"The plaintiff offered testimony as to the value of the land of the plaintiff occupied by the defendant company as a right of way. This testimony was objected to by the defendant upon the ground that it was irrelevant. I sustained the objection of the defendant for the reason that the pleadings in this case confined the proof to the fact as to whether or not the defendant company has complied with its contract as set out in the deed. See ruling on page 66 of the testimony. Even if such testimony is relevant to the issues in this case, that offered was so vague and indefinite that I have been unable from the testimony to arrive at any satisfactory conclusion as to the value of such right of way.

"I find as matter of fact from the testimony that the plaintiff has bought all the reversionary interests of the parties (other than himself) who signed the deed in evidence in this case, marked exhibit 'S.'

"I find as matter of fact from the testimony that the expression, 'freight and passenger depot,' as used in said deed in evidence, exhibit 'S,' was intended to mean and did mean such a freight and passenger depot as was then established and maintained with a resident freight and passenger agent at 'Dalzell,' a station on the said Northwestern Railroad.

"I find as a matter of fact from the testimony that the said defendant company has not established and maintained

such a freight and passenger depot with a resident agent at the station called 'Borden' on the said Northwestern Railroad.

"I find as a matter of fact from the testimony that the plaintiff, George W. Murray, has been damaged by the failure of the said defendant company to establish and maintain such a freight and passenger depot at the station called 'Borden,' and that the amount of such damage has been the sum of $500 up to the date of this report.

"The defendant claims as matter of law that the complaint should be dismissed, for the reason that the contract as set up in the complaint and in the deed in evidence, exhibit 'S,' is such a contract as the court of equity cannot and will not enforce by specific performance. This brings up the only question of law in the case as I see it. It seems to be the general rule in this State and elsewhere that courts of equity will not enforce by specific performance contracts to construct buildings and make repairs, for the reason that it would be impracticable to, if not impossible, for an officer of the Court to carry out such decree. 22 Am. & Eng. Enc. of Law, pg. 996, vol. 22; *McArter* v. *Armstrong*, 32 S. C., pg. 225; *Columbia Water Power Company* v. *Columbia*, 5 S. C., pg. 255. This rule, however, that courts of equity will never assume jurisdiction to enforce a contract which requires some building to be done, is not universal. They have enforced such contracts from the earliest days to the present time. A few cases may be referred to as illustrating the power vested in a court of equity to compel the specific performance of contracts similar to the one at bar. In *Storer* v. *Railroad Company*, 2 Younge & C. N. R., 48, the Court compelled the defendant to construct and forever maintain an archway and its approaches. The Court said there was no difficulty in enforcing such a decree. In *Wilson* v. *Railroad Company*, L. R., 9 Eq., 28, the defendant was compelled to erect and maintain a wharf. See, also, Waterman on Specific Performance of Contracts, sections 11, 28, 29, 30. In Lewis on Eminent Domain, par. 296,

agreements by a railroad company to build crossings or fences, or to locate and build a depot, or to do other things for the benefit of the grantor, may be specifically enforced. It is no answer to suit for specific performance that a specific description of the thing to be done is not contained in the deed or contract. That which is reasonably suitable under the circumstances to answer the purpose intended is what the contract implies. 'L. granted the right of way to a railroad company over his premises, in consideration of which the company agreed to erect and maintain bridges over certain crossings, and also to erect at or near Excelsior Spring a neat and tasteful station building, to be called Excelsior Spring, at which all regular trains should stop. The company entered and built its road, but refused to comply with its agreement.' On a bill for specific performance it was contended by the company that the agreement was too indefinite to be enforced; that the style and plan, size and materials of the structure were not specified. But the Court held otherwise. "To insist that the railroad cannot build a bridge because they do not know whether it should be of wood or iron, or gold or platinum, is a poor excuse. A bridge suitable for a highway crossing is what was intended, and that is definite enough.' In Bisham's Principles of Eq., 6th ed., pg. 501, it is said: 'If within the power of the Court to supervise the performance of the contract, and the equities which justify its specific enforcement exist, the agreement will be enforced. And of late the supervisory power of the Court has been extended to cases which it formerly might not have been thought to cover. Thus courts of equity have assumed jurisdiction to enforce the performance of contracts to operate railways, for the enforcement of agreements between railroad companies for the use of their tracks and the like; and this advancement in remedial equity must be deemed not only serviceable in the interest of the business affairs of men but justified by the inherent elasticity of chancery powers.' The authorities above cited, while tending to show 'advancement in remedial equity' and may be 'justified

by inherent elasticity of chancery powers,' still none of them go to the extent of enforcing by specific performance such a contract as the one at bar.     Here the Court is called upon to specifically enforce the establishment and maintenance of a freight and passenger depot.     Granting that the contract is made definite by the parol evidence making the freight and passenger depot to be established and maintained at 'Borden' similar to that established and maintained at 'Dalzell,' still it would be impracticable, if not impossible, for an officer of the Court to carry out its decree requiring such a freight and passenger depot to be established and maintained.     To do so would require the supervision, first, of the building and then of the daily recurring duties of the agent, and that for an indefinite period of time.     It is asking the Court to go a long way towards assuming, if not the direction and control, at least the supervision of the defendant company's business.     This, it seems to me, the Court will not undertake to do.     I have with great reluctance reached the conclusion that the contract in this case, even as explained by the parol testimony, is such a contract as the court of equity cannot enforce by a specific performance, yet I so find as matter of law.     All of which is respectfully submitted."

Both sides excepted to this report.     The exceptions came on to be heard by his Honor, J. H. Hudson, as special Judge, who sustained the plaintiff's exception and also so much of defendant's exceptions as related to a recommendation of the master that defendant should pay plaintiff $500 damages.     The Circuit Judge held that it was competent to introduce testimony to show what the surrounding circumstances were when the defendant covenanted to erect a freight and passenger depot at "Borden," so as to show what was in the minds of the parties to this action at that time, to wit: the deed of the plaintiff made in May, 1899.     He also held the contract was to be enforced specifically by requiring the defendant to erect at once a depot for freight and passengers at "Borden" like that of defendant at "Dalzell" and

at "Rembert," two stations on defendant railroad, and also to have an agent to sell tickets at "Borden."

The defendant has appealed from Judge Hudson's judgment on twelve separate grounds. The Reporter will incorporate in his report of this, the twelve exceptions as well as the decree of Judge Hudson. These exceptions may be grouped as follows: The first five exceptions, relating as they do to the alleged error of the Circuit Judge in holding that it was competent to receive and consider testimony going to show the circumstances surrounding and moving the parties in the execution of the contract to erect a freight and passenger depot at "Borden" on defendant's railroad; the sixth exception, relating as it does to whether the defendant's building at "Borden" was such as was agreed upon by and between the parties to this action in May, 1899, when the deed and covenant were made; and lastly, the seventh, eighth, ninth, tenth, eleventh and twelfth exceptions, relating as they do in one form or another to the power of the court of equity to decree that a contract to build a depot on its road should be specifically executed, including in this question whether the decree was sufficiently definite in its directions.

First. It seems to us that this Court has already settled the question as to the competency of testimony addressed to the making clear an agreement whose terms need definiteness. It has long been settled law in the Courts of this State as well as in the United States Supreme Court that it is competent to show by evidence outside of a deed or other instrument in writing, what was the true consideration as between the parties thereto. It is a matter of frequent occurrence in our Courts that testimony is competent, *aliunde* the deed, to show that a deed of conveyance absolute on its face was simply a mortgage to secure the loan of money. *Campbell* v. *Linder,* 50 S. C., 169, 27 S. E. R., 648. So in regard to the use of the word "dollars" in a contract, the value of those dollars may be ascertained by testimony outside of the terms of the contract itself. *Thor-*

*ington* v. *Smith,* 8 Wallace, 1; *Confederate Note Case,* 19 Wallace, 548. All these things have been allowed, not as adding to or varying a written instrument, but in the light of the surrounding circumstances, to show what was in the minds of the contracting parties. As was remarked at the beginning of our consideration of this point, our own decisions seem conclusive of this point. In this case at bar the question is what did the parties mean by the use of the words, "a freight and passenger depot" to be erected by the defendant at the station called "Borden?" As was remarked by the appellant, great latitude exists as to the structures known as freight and passenger depots, ranging by his argument from the fine union station at Columbia, S. C., to the "umbrella shed" at present standing at "Borden." These words can be explained by extrinsic verbal testimony. *Rapley* v. *Klugh,* 40 S. C., 134, 18 S. E. R., 680.; *Willis* v. *Hammond,* 41 S. C., 153, 19 S. E. R., 310. Another apt illustration is furnished by the case, *Stoops* v. *Smith,* 1 Am. Rep., 85, when the Court in Massachusetts received parol testimony to show that "advertising chart" meant a chart of a certain material, to be published in a certain manner as verbally agreed upon by the parties. In the case at bar, the plaintiff was shown the lumber on the ground requisite for a depot just like that erected by the defendant at "Dalzell station." The object of the plaintiff was to secure an attraction to outsiders to settle on his lands around "Borden." We overrule these exceptions.

*Sixth exception.* We cannot sustain this exception. It is patent to the eye that the unpretentious erection at "Borden" can scarcely be dignified as a depot for passengers. An "umbrella shed" is scarcely a depot for passengers. This exception is overruled.

Lastly. The master held that a court of equity could not undertake the task of a specific performance of the contract to erect a "depot for freight and passengers" at "Borden," with a resident ticket agent, &c. The Circuit Judge held otherwise and so decreed. Was he in error? It is

asserted that the text writers and decisions vary on this subject. Whenever decisions are opposed to each other, it is always well to ascertain the grounds of the varying opinions of Judges—so as to learn if there is a principle upon which they are divided. The respondent in his suggestive argument on this point thus states his position:

"There is a distinction in the cases between the two classes of contracts for construction: 1. Building contracts, where one agrees for a money consideration to build a house for another on that other's land. Such contracts are not generally specifically enforceable for the reason that the inju done by a breach are easily measured and can be fully compensated in money. See note on pages 996 and 997 of 22 Enc. Law, where we read, 'The rule is almost universal that a covenant to build may not be enforced specifically, for the execution of such contract would be impracticable if not impossible for a court to supervise, whereas the remedy of damages would afford a full redress.' That is to say, the Court cannot act as architect, and another builder may be had and damages for the increased cost and delay recovered in action at law for damages.

"The second class is where one gets land from another upon the consideration of the grantee's erecting at his own expense a building on land actually conveyed upon the conditions that such building should be erected thereon. Miller calls attention to the fact that in these latter cases the building was to be done on the land of the person who agreed to do it (as in the case at bar), 'the consideration for the agree ment was the sale or conveyance of the land on which the building was to be erected, and plaintiff had already, by suc conveyance on his part, executed the contract (as in the case at bar), and the building was in some way essential to the use or contributory to the value of adjoining land belonging to the plaintiff' (as in the case at bar). This decision was in 1863. So that 22 Enc. Law, p. 996, shows the law to be just what we claim it to be. Section 296 of Lewis Em. Dom. (1st edit.), also sustains us. In *Hubbard* v. *K. C.,*

*St. J. & C. B. R. Co.,* 63 Mo., 68 (cited by Lewis,) the Court
held that a plaintiff who relinquished his right of way for
the location of a depot thereon, might after entry by the rail-
road have his remedy in equity for a specific performance of
the agreement to erect the depot—citing *Aiken* v. *A. V. &
R. Co.,* 26 Barb., 289.    The case of *Lawrence* v. *Saratoga
&c. R. Co.,* 36 Hun., 467, is strong in support of plaintiff's
contention.    It held that where a railroad enters upon land
and constructed tracks and structures so that it could not be
restored to its original condition, the railroad company's
contract to build a bridge at the east line and a 'neat and
good overhead bridge near my west line;' and 'erect a neat
and tasteful station for the accommodation of passengers,'
would be enforced and was sufficiently explicit.    And see
Bispham's Prin. Eq. (6 edit., p. 501, 4th edit., p. 140), and
5 S. C., 255.    *McCarter* v. *Armstrong,* 32 S. C., 204, is in-
applicable, because the case was clearly one that could be
compensated in damages—and, indeed, stipulated damages
were fixed—and because the proper drainage of lands was a
matter difficult of ascertainment on rule to show cause why
the decree had not been carried out.    But in our case a de-
cree directing defendant to erect at 'Borden' a freight and
passenger depot like that now at 'Dalzell,' 'a station on its
own railroad, can be readily enforced.' "

To our mind the case at bar presents the case where the
plaintiff has conveyed the land whereon the depot is to be
erected; that the consideration moving to this conveyance
was the erection by the defendant of a depot for freight and
passengers which the plaintiff reasonably expected would
enhance the value of his surrounding lands; whereas the in-
ferior depot erected, with no ticket office or resident agent
there located, was not calculated to enlist the persons desir-
ous of locating there to do so.    We think Justice Miller
pointed out in the quotation of his opinion the true grounds
for an interference by the court of equity of specific per-
formance.    We do not see any ground upon which to base a
criticism of Judge Hudson's decree as indefinite.    There are  .

the two depots, the one at "Dalzell" and the other at "Rembert," as models for the depot.    An agent is easily supplied. These exceptions are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be and hereby is affirmed.

MR. JUSTICE GARY *concurs in the result.*