# CHARLESTON.

HARPER et al. v. THE VIRGINIAN RAILWAY CO.

Submitted September 21, 1915.   Decided October 19, 1915.

1. RAILROADS—*Specific Performance—Contract to Maintain Depot.*
   The contract or covenant of a railway company with a land owner, in consideration of the grant of a right of way through his lands, and of land for depot purposes, to build and operate a depot on the grantor's land, not specifying the length of time, is not void per se, and may be specifically enforced so long as its performance by the railway company will not materially interfere with the rights and interests of the public to be served by such railway company; or it

76 W. Va.

has not become otherwise unduly burdensome and inequitable.  (p. 792).

2.  SPECIFIC PERFORMANCE—*Right to Relief—Contract to Maintain Depot.*

   Specific performance of such contract will not be denied where no hardship or injustice will result, and where an action for damages can give the grantor no adequate relief.  (p. 793).

3.  RAILROADS—*Contract to Maintain Depot—Full Information—What Constitutes.*

   In such a case the building and operation of a depot on the land granted for a short time will not amount to full performance of the grantee's covenant so long as the rights of the public to be served by the railway company have not intervened and continuance thereof has not become unjustly burdensome and inequitable to the railway company.  (p. 793).

4.  SPECIFIC PERFORMANCE—*Contract to Maintain Depot—Right to Enforce.*

   Nor is such a contract so indefinite and uncertain in its terms, and because of the continuity of the acts required in specific performance, extending as they necessarily do into the future, as to be unenforceable in equity.  (p. 794).

5.  RAILROADS—*Depot Contracts—Covenant to Maintain Depot—Release.*

   A subsequent deed between the same parties, correcting errors or enlarging boundaries, made pursuant to the previous contract and deed, and referring thereto, but omitting the covenant, will not be construed as a release of the covenant, when it appears from the terms of the latter deed and from the subsequent acts and conduct of the parties, that such release was not intended.  (p. 795).

6.  SAME—*Contract to Maintain Depot—Right to Enforce.*

   But such contract or covenant will be enforced in a court of equity so long and so long only as it may be done consistently with the public interests and the duties and obligations of the railway company in respect thereto, and it has not become unduly burdensome and oppressive to continue compliance therewith.  (p. 796).

7.  SPECIFIC PERFORMANCE—*Contract to Maintain Depot—Burden of Proof.*

   In a suit for specific performance of such contract the burden is upon the railway company to show that it is no longer able to perform the covenant consistently with its duties to the public or that continuance thereof has become burdensome and oppressive, or otherwise inequitable.  (p.796).

8.  SAME—*Contract to Maintain Depot—Defense.*

   In the case at bar no adequate defense was interposed, nor show-

ing made entitling the defendant to relief from specific performance
of its covenant.    (p. 797).

9.    RAILROADS—*Covenants—Enforcement Against Grantee of Cove-
nantor—Contract to Maintain Depot.*
        Such a covenant is one running with the land granted, and en-
forceable against the grantee of the covenantor.    (p. 798).

10.    APPEAL AND ERROR—*Contract to Maintain Depot—Decree—Modifica-
tion on Appeal.*
        Where the decree of specific performance in such case does not
protect the public interests and the interest of the railway company
in the future performance of its duties and obligations to the public,
it may on appeal be modified in that particular, and as so modified,
affirmed.    (p. 798).

Appeal from Circuit Court, Raleigh County.

Suit by H. H. Harper and others against the Virginian Rail-
way Company.    From decree for plaintiffs, defendant appeals.

*Modified and affirmed.*

*G. A. Wingfield, McGinnis & Hatcher* and *Brown, Jackson
& Knight,* for appellant.

*McCreery & Patterson* and *A. P. Farley,* for appellees.

MILLER, JUDGE:

The covenant in plaintiffs' contract of September 20, 1902,
and in their deed of February 23, 1903, a part of the con-
sideration for their grant of a right of way and depot grounds
to The Deepwater Railway Company, defendant's pre-
decessor in title, and specific execution of which is sought by
the bill, is as follows: "It is further agreed that said Rail-
way Company is to erect on the land of the parties of the
first part, a depot, for the general accommodation of the pub-
lic.    The said depot is to be built and operated within one
year from the completion of said R. R."

The decree of September 6, 1913, appealed from, is that:
"The Virginian Railway Company, a corporation, shall and
it is hereby required and directed to comply with the terms
of the deeds set forth and mentioned in the bill of complaint
filed herein· and to maintain and operate its station and depot
building at Harper, Raleigh County, West Virginia, for the
accommodation of the public in general at all reasonable hours

in a reasonable and proper manner and to place and keep at said depot and station building a suitable and competent agent or person in charge of the same and place therein and thereat proper and suitable equipment and conveniences in and about said station building for the accommodation of the general public, and in all respects conduct, equip and maintain said station or depot in the same manner and method as that in which stations of a like character and kind are conducted, equipped and maintained by said The Virginian Railway Company, a corporation, where they have an agent in charge of the same, so that the public generally may be properly and reasonably accommodated."

The record shows that a depot was erected on the land granted, but whether by The Deepwater Railway Company, the immediate grantee, or by the defendant, its successor in title, is not quite clear from the record, and that the depot was also operated by an agent from about October 1, 1907, to April 30, 1909, inclusive, a period of about eighteen months, substantially as decreed. The record also shows that The Deepwater Railway Company, about April 22, 1907, deeded to the defendant this property, along with all other property owned by it, subject to all the rights and liabilities pertaining thereto.

Several grounds for reversal of the decree are assigned and relied on: (1) That a court of equity will not decree specific performance of a contract to build and operate a railroad station or depot; (2) that such a contract is complied with by the erection and operation of the depot, even though the operation be discontinued after a time, when it is found that the public necessity does not require such depot; (3) that where the contract is uncertain and indefinite in its terms, as it is claimed this one is, specific performance will not be decreed; (4) that by the subsequent deed of December 19, 1905, from the plaintiffs to The Deepwater Railway Company, pleaded and filed in the record, which does not contain the covenant relied on, all previous covenants and agreements became merged in it, and that that deed must be looked to and to it alone as the final repository of the terms and provisions of the contract; (5) that a contract to erect and operate a depot does not require perpetual service of an agent at the

depot, and that when under such a contract the railway company has built the depot and operated it until it is demonstrated that the public necessities do not require the depot, the contract is complied with; (6) that the covenant sued on is for a personal service and does not run with the land.

The first proposition, that a court of equity will not decree specific performance of such a contract, is not one of general application. A correct statement of the rule, according to reason, and the great weight of authority is, that such contracts are not void per se and will be specifically enforced, unless to do so would be to subordinate public to private interests, or would so hamper the railway company that it could not properly discharge its duties to the public in general. 36 Cyc. 586, citing numerous cases on the subject in note 69, including *Taylor* v. *Florida East Coast Ry. Co.*, 54 Fla. 635, 16 L. R. A. (N. S.) 307, 14 Am. & Eng. Anno. Cas. 473, and valuable note citing cases, and *Lawrence* v. *Saratoga Lake R. Co.*, 36 Hun. (N. Y.) 467, affirmed in 42 Hun. 655; *Lyman* v. *Suburban R. R. Co.*, 190 Ill. 320; *Jessup* v. *Grand Trunk R. R. Co.*, 28 Grant's Chancery Rep. 583; *Murray* v. *Northwestern R. Co.*, (S. C.) 42 S. E. 617. ' And the rule is that where such contracts are fair and involve no surrender of public interest, and where for some reason a court of equity would not enforce specific performance, the contract not being void per se, an action for damages will lie at the suit of the grantor. 1 Elliott on Railroads, section 386; *St. Louis & N. A. R. Co.* v. *Crandall*, (Ark.) 86 S. W. 855; *Whalen* v. *Baltimore & O. R. Co.*, (Md.) 69 Atl. 390.

The cases cited and relied upon by appellant's counsel for their proposition, namely, *Port Clinton R. R. Co.* v. *Cleveland & Toledo R. R. Co.*, 13 Ohio 544, *Atlanta & West Point R. R. Co.* v. *Speer*, 32 Ga. 550, 79 Am. Dec. 305, *Blanchard* v. *Detroit, etc., Ry. Co.*, 31 Mich. 43, 18 Am. Rep. 142, *Bestor* v. *Wathen*, 60 Ill. 138, *Texas & Pacific Ry. Co.* v. *Marshall*, 136 U. S. 393, 34 L. ed. 385, *Moseley* v. *C., B. & Q. Ry. Co.*, 78 N. W. 293, and *Southern California Ry. Co.* v. *Slauson*, 71 Pac. 352, are cases which we think fall within the exception of the general rule above stated. True, the United States Circuit Court of Appeals for this fourth circuit, in *Willson* v. *Winchester & P. R. Co.*, 99 F. R. 642, has interpreted *Texas*

& Pacific Ry. Co. v. Marshall, supra, and Texas & P. Ry. Co. v. Scott, 23 C. C. A. 424, as holding that the building of a depot and operating it for any time constitutes performance of such a contract on the part of the railway company, exempting it from liability for specific performance or for damages, but of this proposition more will be said hereafter. In 21 Am. & Eng. R. R. Cases, 835, under Lyman v. Suburban R. Co., supra, there reported, will be found an extensive note, collating many cases applicable to the general rule above stated, and distinguishing the cases involving valid and void contracts of this character. It would be useless to attempt a review of the many decisions cited and others that might be cited on these propositions.

It is true that specific performance is not always a matter of right, and rests in the sound, not arbitrary discretion of the court; but specific performance will not be withheld when no hardship or injustice will result, and where an action at law for damages will not be adequate. We do not think the case presented here can be relievable at law as completely and adequately as by specific performance. How could the plaintiffs' damages be measured? Not only is valuable property involved, but the service of the railway company to the public in general, and to plaintiffs in particular, and for an indefinite time, not inconsistent with the public interests, is also involved. How could damages of this character be adequately measured in a court of law? Our decisions say, generally, that the remedy at law must be as adequate and complete as in equity in order to deprive one of equitable relief.

Now upon the second proposition: Was the railway company's contract complied with by the building and operation of the depot in question for a short time? The principal authorities relied upon for this contention are Texas & Pacific Ry. Co. v. Marshall, and Texas & P. Ry. Co. v. Scott, supra. The principal ground for denying the relief of specific performance in the Marshall Case was that the contract called for a perpetual maintenance in the City of Marshall, of the defendant's principal office, machine shops, and car works, regardless of changed conditions and of the exigencies of the railroad business in the State of Texas, and

such also was the character of the contract in *Texas & P. Ry. Co.* v. *Scott.* As we understand those decisions and others of that class, they in effect hold, that where during the performance of the contract by a railway company the interests of the public, which are always paramount, have intervened, so as to make further performance burdensome and inequitable and against those interests, equity will not compel further performance of the contract. The basis of these decisions is that although the parties to the contract were competent to make it, they must be deemed to have contracted with reference to the subject matter and with reference to the obligation of the railway company to the public, and its inability to subordinate public to private interests, and that the employment of the word *permanently,* or words of equivalent import, in such contracts, mean only so long as the railway company, consistently with its public duties, can continue to maintain and operate the depot or station as provided in the contract; and that such performance of the contract amounts to complete performance of the covenant to build and maintain such railway station. *Atlanta & W. P. R. Co.* v. *Camp,* (Ga.) 51 Am. & Eng. R. R. Cases, (N. S.) 188; *Jones* v. *Newport News & M. V. Ry. Co.,* 65 Fed. 738; *Willson* v. *Winchester & P. R. Co., supra.*

The third proposition, that the contract is indefinite and uncertain in its terms, therefore unenforceable in equity, we think is without substantial merit. The chief argument against relief on this score is the continuity of the acts required by the decree, extending as they do into the future, and requiring, as it is supposed, the constant attention of the court in securing performance of its decree. The old doctrine thus invoked has in later years been broken into by the decisions in the class of cases to which we have been referring. Mr. Pomeroy, 6 Pomeroy Eq. Jur., section 761, and notes, says: ''In analogy to the cases mentioned in the last section, where the company, in consideration of the conveyance to it of land, was compelled to comply with its agreement to erect certain structures for the grantor's benefit, its reasonable agreement to maintain a station on the land conveyed for the plaintiff's convenience, and to stop trains thereat, will be enforced, if that is consistent with the com-

pany's larger duty to operate its road so as to promote the public convenience. But the exception has taken a much wider scope than this. Trackage and operating contracts between railroads, of the utmost complexity, have recently been the subject of decrees of specific performance, although in making their decrees the courts have conceded that they would be called upon from time to time to alter and adapt to changing circumstances their regulations for carrying the decrees into effect, during a long period of years. In the first of this series of cases an important element affecting the decision was a direct public benefit that resulted from not leaving the complainant to its remedy of damages; but no such element appears to have been present in the cases that followed this precedent. Whether this remarkable series of decisions is to be taken as a virtual abandonment, on the part of the influential courts which rendered them, of the rule against specific enforcement of continuing contracts, or merely as an arbitrary exception in favor of operating agreements among railroads, is a question on which, unfortunately, these decisions themselves shed little light.'' The decisions to which we are referred by counsel for appellant are of that class to which Mr. Pomeroy refers as supporting the older rule or doctrine, and which are not consonant with the more modern and reasonable rule to which he refers.

The fourth proposition that the covenant in the original contract and deed, with all other agreements therein, became merged in the deed of December 19, 1905, we do not think well founded in law or fact. That deed while purporting to enlarge the boundaries of the land conveyed and to re-convey the same, was executed pursuant to the terms of the original contract and deed, and was neither by its terms nor intendment an abrogation or release of the former covenants, and we do not think the general principle which counsel seeks to invoke is applicable to the facts in this case; and it is evident that the parties did not so interpret this deed, for as we understand the record the fact is that the station house or depot was constructed by the railroad after the date and delivery of that deed, which would not have been done had the railway company understood that it had been absolved or released from the former covenant.

Nor do we think the fifth proposition is entirely sustained by the authorities. The contract or covenant here involved does not, as did those involved in *Texas & Pacific Ry. Co.* v. *Marshall,* and *Texas & P. Ry. Co.* v. *Scott, supra,* contain words of perpetuity, nor bind the defendant or its predecessor in title to perpetual maintenance and operation of the railway depot, except in so far as the continuity of such service may be implied from the other terms and provisions of the contract; but in our opinion a proper construction of the covenant, looking to the subject matter, and to the character and relation of the parties one to the other, does require maintenance and operation of the railway depot by the defendant so long as it may reasonably be done without interference with the proper performance of its duties to the public in general, and does not become otherwise burden; some and oppressive; nor does the fact that the public necessities may not actually require such depot relieve defendant from the obligation of its contract. There is nothing in the contract involved here, as was the fact in some of the cases which we have examined, inhibiting the defendant from erecting and maintaining depots at other points and places, nor in any way burdening it in the performance of its duties to the public, so it is not a question whether the public necessities require the depot, but whether consistent with its other obligations to the public it may and ought to be required to continue compliance with its contract.

In suits to enforce specific performance of a contract like the one involved here it is for the defendant to show by way of defense that it is no longer able to perform the covenant consistently with its duty to the public in general, or that performance thereof will be burdensome and oppressive or otherwise inequitable. This proposition we think fully supported by *Atlanta & W. P. R. Co.* v. *Camp, supra,* and the leading decisions cited and referred to therein, which include many of the cases already cited in this opinion. The second point of the syllabus in that case, which we think states the doctrine correctly, and the rule which we think should control us in the disposition of this case, is: "The contract by a railroad company to locate a station at a given point is not per se void. Such a contract is enforceable against the railroad

76 W. Va.

company so long as it is possible for the company to discharge the duties owed by it to the public, and, at the same time, discharge the duties incumbent upon it by the contract. Whenever a time arrives that the company is hampered in the discharge of its duties to the public, by its undertaking under the contract to establish the station, the station may be abandoned, notwithstanding the contract, as it is to be presumed that the parties to the contract entered into the same with full knowledge of the duty of the railroad company to subordinate private interests under contracts made by it to the public rights, whenever there is a conflict between the same. But, in a given case, it is incumbent upon a railroad company, before it could be discharged from a contract to locate a station, to establish satisfactorily that there has arisen such a conflict between its public duties on the one hand and its duties under the contract on the other that it is impossible for it to discharge the former without entirely abandoning the latter.''

Outside of the legal propositions contended for, the only defense offered by the defendant in this case is that the public necessities do not require performance of this covenant, and that the operation of the station as decreed will not result in profit to the railroad company. The evidence shows that the village of Harper, where this station is located, contains some forty houses, occupied by tenants; that there are a number of stores there and in that vicinity, which forward and receive goods and merchandise at that point; that this station is located upon a public road leading from the town of Beckley, the county seat of Raleigh County, and a town of considerable importance, and only six miles distance from this station; that hacks or busses run between the two points; that many passengers are received and discharged there every day; that there are two or three coal operations in close proximity to this station, and that there are living within a patronizing radius of this station about one thousand people, who will be accommodated by the maintenance and operation of the depot at this point; and the record shows that the income from this station for freights forwarded and received and tickets sold to passengers, notwithstanding the limited service and no service for the period from August, 1907, to

October, 1911, aggregated nearly twenty two thousand dollars. True, a part of this large sum was due to the business of the railway company in improving its tracks in the vicinity of Harper's station during the months of May, June, and July, 1911, but we do not see that this business is wholly unprofitable to the railroad company. No figures are given us. Defendant's case stands on the bare statements of some of the railway officers. True, the record shows that another station is located at Eccles, some two miles distance in one direction, and another some six or seven miles away in the other direction. These, it is contended, give reasonable service for the business at all three points. But be this as it may it constitutes no defense to specific performance of the contract. And our conclusion is that the burden of a proper defense has not been borne by the defendant, and that there is nothing in the record at the present time disclosing any sacrifice of public interests or unjust or unreasonable burdens cast upon the defendant by the decree appealed from, or in the way of its proper performance of its contract as decreed, and that until such a showing be made the decree of specific performance should stand. But that the defendant's rights and the rights of the public may be fully protected in the future the decree below will be modified as hereinafter directed.

The sixth and last proposition is that the covenant sued on is for personal service and not a covenant running with the land. The authorities cited do not sustain this proposition. By the deed from The Deepwater Railway Company to the defendant it took the lands and property conveyed with all the burdens imposed by the covenants in the contract and deed from plaintiffs, and thereafter stood in privity with them and bound to them to perform those covenants. *Dorsey* v. *St. Louis, Alton & Terre Haute R. R. Co.*, 58 Ill. 65, 10 Am. Ry. R. 425; *Aikin* v. *Albany, V. & C. R. Co.*, 26 Barb. 289; *Georgia Southern R. Co.* v. *Reeves,* 64 Ga. 492; 20 Ency. Pl. & Pr. 410, 411.

Now with respect to the proposed modification of the decree. We are of opinion that the decree should be so modified as to continue the same in force so long and so long only as consistently with defendant's duties to the public in general, and compliance therewith shall not have become unduly

burdensome and unjust, and the defendant may reasonably be required to maintain and operate the depot at Harper, and that when in accordance with these principles it can no longer reasonably be required to continue the maintenance and operation of said depot, the coercive power of the court may be withdrawn and the parties left to the pursuit of such legal remedies as they may then have.

The practice of so modifying a decree seems to be justified by our precedent in *Robinson* v. *Edgell,* 57 W. Va. 157, 165, and the case from New Hampshire there cited for the proposition.

As so modified we are of opinion, therefore, to affirm the decree.

*Modified and affirmed.*