## CHARLESTON.

### SHOCK *v.* GOWING.

Submitted March 7, 1911.   Decided November 12, 1912.

1.   APPEAL AND ERROR—*Review—Questions of Fact.*
     This Court will not disturb the decree of the lower court
     confirming a commissioner's report as to a question of fact,
     found upon conflicting testimony, unless it appears that such
     decree is clearly against the preponderance of evidence.
     (p. 250).

2.   SALES—*Passing of Title—Construction of Contract.*
     When a contract for the sale of personal property leaves in
     doubt the question as to when title passes, it is proper to con-
     sider the situation of the thing sold and the circumstances
     surrounding the sale, in order to determine the intention of
     the contracting parties.   (p. 253).

Appeal from Circuit Court, Braxton County.

Bill by W. P. Shock against D. H. Gowing.   Decree for de-
fendant, and plaintiff appeals.

*Affirmed.*

*Hall Bros.,* for appellant.
*Linn, Byrne & Hines,* for appellee.

WILLIAMS, JUDGE:

This is an attachment suit in equity to collect a debt of
$883.04 for an alleged sale of logs, brought on the ground that
defendant is a non-resident.   From a decree pronounced on the
25th of May, 1907, dismissing his bill, plaintiff has appealed.

The decision of the case turns upon the question whether or
not title to the logs had passed to defendant.   They were car-
ried off by a flood in the Little Kanawha river in January, 1905,
and lost, hence this suit.

On the 15th of December, 1906, the cause was referred to
a master commissioner to take, state and report whether or not
there was an executed contract of sale between the parties, and
also all matters in difference between them.   The commissioner
reported that there had been, in fact, no sale of the logs in
question, but reported a balance of $16.38 was due plaintiff from
defendant for channeling other logs purchased at another time,

the sale of which is not involved in this suit. Both plaintiff and defendant excepted to the report, and the court, on final hearing, made a decree overruling plaintiffs exceptions, sustaining defendant's exception to the item of $16.38, confirming the report in all other respects, and denied plaintiff relief and dismissed his bill.

The alleged contract of sale is oral, and the testimony respecting it is conflicting and voluminous. We are asked to reverse the decree of the lower court on a question of fact, supported by the finding of a commissioner based upon conflicting testimony. According to the well established rule, we should not reverse such decree unless we are satisfied that it is against a clear preponderance of evidence; we must see that it is clearly wrong.

"Where questions purely of fact are referred to a commissioner, his finding will be given great weight, though not as conclusive as the verdict of a jury, and should be sustained, unless plainly not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, when the findings of a commissioner have been approved by the court below." *Reger* v. *O'Neal,* 33 W. Va. 159. This rule has been re-announced, in varying phraseology, many times since that decision. *Wolfe* v. *Bank,* 54 W. Va. 689; *Baker* v. *Jackson,* 65 W. Va. 282. Even when the question of fact found by the lower court has not been reported by a commissioner, this Court will not reverse its decree, upon conflicting testimony, unless it is satisfied that the finding is decidedly against the weight of evidence. *Kennewig Co.* v. *Moore,* 49 W. Va. 323; *Naughton* v. *Taylor,* 50 W. Va. 233. Much less, then, is the appellate court disposed to do so when the finding of the court is supported by the previous finding of a commissioner. .Such a decree, although not entitled to so much consideration as the verdict of a jury, found on conflicting testimony, is nevertheless entitled to great respect.

The evidence in this case fills more than six hundred pages of the record; to review it in this opinion would be a waste of time, and would encumber the reports with useless matter. It suffices to say that we have carefully read and considered it, and we do not think the court erred in holding that plaintiff's

proof was not sufficient to entitle him to relief. The following facts will suffice to show the character of the case.

Defendant had a boom in the Little Kanawha river near Burnsville, operated a veneering mill at that point, and bought logs to be manufactured at his mill, but not for the general market. His agent, C. L. Sample, had bought logs from plaintiff which were delivered at various points along the river, above Burnsville, on a number of previous occasions, at the price of fourteen, fifteen and sixteen cents per cubic foot, according to the points of delivery. The logs were then measured and branded and paid for. A number of different purchases were made in this way, and in every instance, except the first, the logs were measured and branded by the purchaser before any payment was made. The first purchase was made and the price paid, upon estimate only; the estimate proved to be more than the actual quantity, and plaintiff returned the difference in cost as soon as the correct amount was ascertained by actual measurement. The measuring and branding of the logs, before paying for them, is a very potent circumstance tending to prove that the parties did not regard the sale complete until that was done; measurement was necessary to ascertain the amount of money to be paid.

Plaintiff testified that there were about 200 logs included in the particular sale in question; that they aggregated about 5,605 cubic feet; that he was to receive sixteen cents per cubic foot and that the sale was consummated on the 20th of January, 1905. A. D. Shock, plaintiff's cousin, was present when the alleged sale took place, and testifies to the oral contract between the parties. But neither plaintiff nor Shock says that any price per cubic foot was agreed on. They both testify, however, that Mr. Sample addressed a letter to Mr. Tory, defendant's measurer, directing him to measure the logs, and delivered it to plaintiff to be carried to Mr. Tory; and plaintiff says he delivered it. The letter is made evidence, and Mr. Sample admits writing it; but he says no price for the timber was then agreed on, and that the arrangement was not different from other agreements for the purchase of timber, made on previous occasions; that is, that defendant was not bound for any logs until they were measured and branded with his brand. Sample's

letter to Tory is perfectly consistent with such an understanding. None of the logs in question were ever measured or branded by defendant or his agent. Several witnesses testify that many of the logs, at the date of the alleged contract, were gorged in the river with other logs, and could not then have been measured. Plaintiff says he made two or three trips to Mr. Tory's camp, after the 20th of January, to get him to measure them. Plaintiff's anxiety to procure the measurement. would seem to corroborate defendant, because it tends to prove that plaintiff, as well as defendant, understood that measurement and branding were necessary to complete the purchase. Moreover, defendant being engaged in the manufacture of veneering at Burnsville, and not buying logs for the market generally, would not likely purchase timber in the river below his boom, if he knew it. A number of witnesses testify that, from 125 to 150 of plaintiff's logs were carried through defendant's boom on a rise which occurred in the Little Kanawha river, on January 11th, 12 and 13th, 1905; that they were engaged in catching logs in the river during that rise and saw plaintiff's logs pass down the river; that they knew them to be his logs by the brand "W. P." This testimony tends to prove that most of the logs in controversy had passed beyond defendant's place of manufacture, seven or eight days before the alleged sale, and were not at the place plaintiff represented them to be at the time he claims to have sold them. Furthermore, A. D. Shock, who was interested with plaintiff in some previous logging contracts, and who testified in his behalf, admits that about fifteen of the logs in question were caught in the river and rafted by Ed. Clifford, for witness and plaintiff, and were disposed of by them to the Nicollette Lumber Company. Without specifically pointing out more of the evidence, it is sufficient to say that we find abundance of testimony to warrant the finding by the commissioner and by the chancellor that both parties to the contract understood that a measurement and branding were necessary to pass title to defendant.

"The question, whether a sale of personal property is complete or is only executory, is to be determined from the intent of the parties as gathered from the contract, the situation of

the thing sold and the circumstances surrounding the sale."
*Morgan* v. *King,* 28 W. Va. 1.

After a careful consideration of the testimony to which we have been cited in briefs of counsel, to sustain their respective contentions, we see no reason to disturb the decree of the lower court. We, therefore, affirm it.

*Affirmed.*