# CHARLESTON.

SMITH v. WHITE *et al.*

Submitted November 30, 1915.   Decided December 14, 1915.

1. APPEAL AND ERROR—*Decree—Finding of Commissioner—Conflicting Evidence—Damages.* ·

   This court will not reverse a decree of the lower court based upon the finding of a commissioner, to whom the cause has been referred to ascertain and report the amount of damages sustained by a vendee of land on account of the breach of a covenant against encumbrances, by the existence on the land, at the time of the conveyance, of a subsisting, but unused easement, when the amount of such damages depends upon conflicting oral testimony, and it does not appear that such finding is clearly erroneous.   (p. 378).

2. COVENANTS—*Covenants Against Incumbrances—Breach—Damages Recoverable.*

   In estimating such damages, the fact that the vendee bought the servient land as an outlet for the coal in other lands can not be considered, when there is no proof that the vendor knew it was bought for such purpose.   Damages on account of other lands would be in the nature of special damages, not contemplated by the contracting parties, and therefore, not recoverable.   (p. 378).

Appeal from Circuit Court, Mingo County.

Suit by Will M. Smith against M. Z. White and others. From decree for plaintiff, defendants appeal.

*Affirmed.*

*Malcolm Jackson, Edward C. Lyon, Wells Goodykoontz,* and *Campbell, Brown & Davis,* for appellants.

*S. D. Stokes* and *Wade H. Bronson,* for appellee.

WILLIAMS, JUDGE:

This suits was brought by Will M. Smith, grantor, against M. Z. White, grantee, and the United Thacker Coal Company, to enforce a vendor's lien on a tract of 688.5 acres of land. Smith conveyed the land to White on August 7, 1907, in consideration of $42,000.00, only one-third of which was paid in cash, and covenanted against encumbrances. Although ostensibly the owner, White purchased for the United Thacker Coal Company and holds the title to the land as trustee for

it. They both answered, averring a breach of the covenant because of certain easements upon the land, created by Smith's predecessor in title, in favor of Richard Torpin and others, trustees for the Logan Coal & Timber Association. They averred that the easements materially affected the value of the land, and asked to have the damages ascertained and set off against the unpaid purchase money. The circuit court denied them relief, and, on appeal to this court, the decree was reversed and the cause remanded, with directions to ascertain the quantum of damages, and allow the same as an off-set against the unpaid purchase money. That appeal settled the principles of the cause. *Smith* v. *White et al.,* 71 W. Va. 636.

When the case went back it was referred to a commissioner with instructions to take evidence upon the question of damages, ascertain and report how much, if anything, defendant was entitled to, according to the rule for ascertaining the damages fixed by the decree of this court, which is the difference in value of the land with the easements on it, and its value if the easements did not exist. After taking and considering the testimony of about twenty witnesses, a number of whom are experienced civil and mining engineers, the commissioner reported that defendant was damaged to the extent of $1,600.00, and, allowing that sum as a credit on the unpaid purchase money note, as of its date, reported a balance due plaintiff of $12,400.00, with interest thereon from August 7, 1907, the date of the note. Defendant excepted to the report on the ground that the damages found were much less than the evidence showed it was entitled to. The court overruled the exceptions and confirmed the report, and decreed to plaintiff the sum of $17,345.38, that being the sum found by the commissioner, with interest added to the date of the decree, and directed the land to be sold, if the same were not paid within thirty days from adjournment of court; and defendant has appealed. The sole question presented is, is the amount of damages adequate, in view of the evidence?

The damages are occasioned by an easement granted November 1, 1900, by Jacob Smith, plaintiff's ancestor and predecessor in title. The material part of that deed is as follows:

"Do grant unto the said trustees, their successors, lessees

and assigns, a free and complete right of way for the construction and use of roads, roadways, tramways, railroads and bridges for the purpose of transporting coal, gases, salt water, oil and minerals, logs and lumber of every description to, from and over a certain parcel of land lying on Mate Creek in Mingo County, West Virginia and adjoining a tract conveyed by the said trustees to the said Jacob Smith, upon certain trusts, etc. by said above mentioned deed, together with full mining privileges and the right to erect tipples and other buildings or structures necessary for mining, and marketing, said minerals and lumber, provided, however, that no miners' dwellings shall be erected or constructed upon the said land without the consent of the said Jacob Smith or his heirs or assigns; provided further that compensation shall be made for any buildings or other improvements taken or injured in the erection or construction of said roads, roadways, etc. and any tipples or other structure or buildings heretofore included.

"The said rights and privileges above granted shall extend only to that part of the lands of the said Jacob Smith on Mate Creek which lies in front of the land conveyed by said trustees to said Jacob Smith, and extending from the upper end or line of said lands so conveyed to said Smith down the creek to the lower end of said Smith's lands on said creek, and said rights of way shall not extend to that part of said Smith's lands on said creek lying above the land so conveyed by the said Trustees to said Smith."

The owner of the easement has not selected a location for its railroad, coal tipple, or any of the structures it is entitled to erect on the land, nor has it exercised any of the rights conferred by the aforesaid grant. The servient land, known as the Smith tract, lies on Mate Creek, in a long narrow strip extending up the creek from the mouth of Meador Branch to the headwaters of the creek, and includes all the bottom land on both sides of the creek. The length of the tract is east and west, and, near the middle of it, at the mouth of a branch called Line Hollow, the north and south boundary lines approach so nearly as to almost sever the tract. From this point down to Meador Branch the tract is much narrower than the eastern end of it, and is designated on the maps and

in briefs of counsel as "Section A", and the eastern portion as "Section B". The easement is limited to section A. Lying just north of that section and separated from Mate Creek by a narrow strip of the Smith land, extending the full length of section A, is the dominant tract of 1042 acres owned by the Logan Coal & Timber Association. All the land on Mate Creek is underlaid with two or three rich coal seams, and the only practicable way to develop the coal is by means of mining plants located in the valley of Mate Creek and a railroad extending up it. Such road would necessarily extend along and over section A for a considerable distance, and defendant insists that the owner of the easement, having the superior right, would have the right of choosing the location for its railroad, tramways, tipple and sidetracks, that it would not be confined to one side of the creek, but could build its railroad partly on either side, and thereby render it impracticable to build more than one railroad up the creek, thus so interrupting the only access to its coal as to damage it to the extent of $21,000.00, half the price it paid for the whole Smith tract.

It must not be presumed, however, that the owner of the dominant estate will so locate its easement as to cut off access from the owner of the servient estate, if it is feasible and practicable to locate it otherwise. Not being specifically located in the grant, the selection of the right of way would have to be a reasonable one. It could not be wantonly made in disregard of the rights of the servient owner. They both have rights which the law will protect, and the Logan Coal & Timber Association would not be permitted to occupy all the available space on Mate Creek with a railroad unless it were reasonably necessary to the full enjoyment of the rights granted. There is no rule whereby damages, in a case of this kind, can be ascertained with mathematical precision and hence it rarely happens that the amount of damages, whether ascertained by a commissioner in changery or by a jury, is satisfactory to both parties. There is always a wide divergence of opinions in such cases. The evidence by which the commissioner determined the damages is mostly opinion evidence. Such evidence in most cases is of more or less uncertain value, and particularly is that true in this case, be-

cause the owner of the easement has never located it, and it can not now be known when or exactly where it will locate it. So that, although the damages are substantial, the amount is largely a matter of conjecture, and all the court can do is to determine, from the conflicting evidence, such an amount as, in its judgment, is reasonable. About an equal number of witnesses, some of whom were mining engineers and coal operators of experience, testified for the respective parties. Some of them went upon the land, located the outcroppings of the different seams of coal and examined section A of the Smith tract, to ascertain whether or not it is practicable to build two railroads along the creek. Some of defendant's witnesses say it is impracticable to build more than one railroad. These witnesses estimate defendant's damages at at least $21,000.00. On the other hand, plaintiff's witnesses, who appear to have had equal knowledge of the location of the land, the outcroppings of coal and the physical conditions on Mate Creek, some of whom are likewise civil and mining engineers of long experience, testified that it is practicable to locate two railroads along the creek, and to establish two coal plants without very great interference with each other. N. H. Mannakee, a civil and mining engineer of twelve years experience, says he examined section A, about ten days before testifying and made a topographical survey of the bottom land; that there is about 35 acres of bottom land; that he projected a railroad on the north side of Mate Creek and located a place for "a tipple, a conveyor, a power house, supply house, stable, store and superintendent's house," and included in his projection storage tracks for empty cars, three tracks under the tipple for preparing and loading three sizes of coal, the necessary switch connections with these tracks, and also a track to take care of the loaded cars; and that the plant he projected covered only 3.02 acres of ground after allowing for reasonable distances between the buildings. He says he also projected a similar railroad and mining plant on the south side of the creek, of sufficient capacity for the development of the Smith tract; that for the latter plant, he allowed 5.15 acres, giving a distance of 36 feet between the houses; that he allowed 40 feet for the width of each railroad, except at the tipples where he estimated 60 feet for the three

tracks; that he allowed 30 feet for the width of the county road and 20 feet for the width of the creek; and that, after making all necessary allowances for the two railroads and the two coal plants, there was left fifteen or twenty acres of bottom land available for other purposes. In addition to the bottom land, he says there is also much of the hillside land which is not too steep to be occupied with miners' houses. In the opinion of this witness, the operation of the two plants will not seriously interfere with each other. He says it is not uncommon for two coal plants to be located in such close proximity. He says he knew the dip of the coal and the outcroppings of the veins, and says he projected the plants at the points where, in his judgment, it will be proper to locate them for the development of the respective properties. This witness is the only engineer who thus made a test of the practicability of building two railroads and locating two coal plants on Mate Creek on section A. None of defendant's witnesses say his plan is impossible, none of them appear to have made so careful a test as he. He estimates defendant's damages at $150.00, $50.00 an acre for the land actually occupied which, being bottom land, he says is not valuable for the coal underneath it, because the seam is too near the surface to be mined. R. F. Carson, a civil engineer, one of defendant's principal witnesses, surveyed a railroad for the Logan Courthouse and Matewan Railroad Company in 1909, from the Norfolk & Western Railroad at Matewan, up Mate Creek and to the waters of Gilbert Creek and down that creek to the Guyandotte River at Gilbert, and is, perhaps, as well acquainted with the physical conditions on Mate Creek as any other witness. He says the width of the valley proper on Mate Creek varies from 125 feet to 225 feet. On Cross-examination he was asked if there was room enough on the bottom land of section A of the Smith tract to build two railroads, each having a right of way of fifty feet, and replied that it might possibly be done. This witness estimated defendant's damages at one-half the value of the land, or $21,000.00.

It would serve no useful purpose to encumber the reports with a lengthy citation of the testimony of the various witnesses. The testimony already referred to is perhaps entitled to more weight than that of most other witnesses, on account

of the opportunity that Mannakee and Carson had to become acquainted with the actual physical conditions on Mate Creek, and it serves to show the character of the evidence generally, upon which the commissioner was bound to base his estimate of the quantum of damages.   A case will rarely be found wherein the opinions of competent experts are more widely divergent than they are here.   None of plaintiff's witnesses estimate the damages at more than $1,000.00, and none of defendant's witnesses estimate them at less than $14,000.00. On the conflicting testimony the commissioner found that $1,600.00 fairly compensated defendant for the damages suffered.

Defendant owned other lands joining section B of the Smith tract on the north, east and south, which the evidence shows would have to be mined through and over the Smith land, and transported to market down Mate Creek, thus necessitating the building and operating, by defendant, of a much larger mining plant on the Smith tract than would be required for the removal of the coal from that tract alone.   Defendant insists that this situation would materially augment its damages.   But the commissioner did not consider that fact in estimating the damages, and we think rightly so, for there is no evidence that plaintiff knew, when he made his covenant, that defendant was buying the Smith tract for a special purpose and with a view to using it as an outlet for coal in other tracts it owned; and, to allow damages on that ground, would be to give special damages where none such were contemplated by the contracting parties.

The commissioner reported, after giving the evidence "the most serious study," that, in his opinion, it was proven there was sufficient level land along "Section A" of the Smith tract, on Mate Creek, together with such portions of the adjacent hillsides as can be used for the erection of the necessary structures about a coal mining camp, to enable the Logan Coal & Timber Association to enjoy all the rights granted to it by Jacob Smith, and still leave a sufficient quantity of ground, in good shape, for the United Thacker Coal Company to mine and ship all the coal underlying the Smith tract.   He also reported that ten acres is ample for the exercise and enjoyment of all the rights granted the Logan Coal & Timber

Association, and that the exercise of those rights would not seriously interefere with, or increase the cost of mining and shipping the coal from the Smith tract; that, if both parties should be engaged in mining coal at the same time, it would, in some small degree, inconvenience and perhaps damage defendant company. He fixed the value of the land that would be actually occupied by the Logan Coal & Timber Association's easement at $600.00, or $60.00 per acre, to which he added $1,000.00, as he says, to cover damages that might be sustained on account of the inconvenience resulting from the proximity of the two competing plants; and says it is as nearly a correct estimate as he can make. The decree appealed from recites, that upon a mature consideration of the report and the evidence taken and returned therewith, by the commissioner, the court overruled defendant's exceptions to the report and confirmed it, and decreed that plaintiff recover of defendant the sum of $17,345.38.

The opinion of the lower court on questions of this sort, depending on conflicting testimony, is entitled to great respect from this court, and will not be disturbed, unless we can see that it is plainly erroneous. This rule has been asserted by this court so frequently that it is only necessary to mention it. Some of the more recent declarations of the rule are found in *Norfolk & Western Ry. Co.* v. *Stipp*, 70 W. Va. 700; *Wethered* v. *Conrad*, 73 W. Va. 558; and *Shock* v. *Gowing*, 71 W. Va. 250.

We can not say the amount found and reported by the commissioner and confirmed by the court is clearly erroneous, and the decree will be affirmed.

### On Petition for Rehearing.

We have carefully considered the petitions for rehearing, filed by the able counsel for appellant, and the authorities they have cited, and we are not convinced that our decision is erroneous. Although the commissioner does say he did not consider the advantage of the Smith tract, as an outlet for the coal in other lands owned by appellant, in estimating its damages, still it appears the witnesses took into consideration the peculiar situation and market value of the Smith

tract, in arriving at the damages. By this we understand they considered the market value for any and all lawful purposes, both with and without the easement. They must, therefore, have contemplated its value as an outlet for coal in other lands, whether they were owned by appellant or by another. The commissioner could reach his conclusion as to what is a reasonable amount of damages, only from the conflicting opinions of witnesses. He had nothing else to guide him. In estimating the amount of ground, necessary to be occupied by appellant for a coal plant on the Smith tract, witness Mannakee says he allowed for "such a plant as could be economically installed in this field to mine the coal that is to be mined at that point." Again, he says: "The layout is one which I think would be made even if the United Thacker people controlled all the bottom with no easements on it." Nearly all of the witnesses who testified on either side of the question, appear to have regarded the Smith tract as furnishing the only outlet for the coal lying on either side of the creek, and estimated appellant's damages accordingly. Fairly considered, we think the evidence proves there is sufficient room on the Smith tract for two plants large enough to accommodate all the coal to be mined on either side of Mate Creek. The Smith tract being the only outlet for the coal underlying the Logan Coal & Timber Company's land, there was some effort to prove that the easement was of great value to that company. But that is not the measure of damages to the servient tract. The easement might be of almost inestimable value to the owner of the dominant tract, and yet cause very little actual damage to the servient land. Because appellant would be in position, if the easement did not exist, to compel the Logan Coal & Timber Company to pay a fabulous price for it, or prevent development of its coal, if it saw fit to do so, and thus practically destroy the value of its land, is not a matter to be considered in estimating appellant's damages. Damages are not measured by the value to one person of an opportunity to extort money from another, but by what he actually suffers himself. A man's property rights often enable him to take an unfair advantage of his neighbor, without violating any rule of law. But the policy of the law encourages equity and fair dealing; it does not consider, as

an element of damages, the loss of opportunity to force a hard bargain; the law does not favor monopoly. A rehearing is denied.

*Affirmed.*