# CHARLESTON

### HENNEN v. DEVENY.

Submitted February 13, 1912.   Decided January 21, 1913.

EASEMENTS—*Express Grant—Construction.*

> B., the owner of a large lot, conveyed a portion of it, 40x70 feet, to certain named trustees of the Methodist Episcopal Church, in trust for a place of worship for the use of the members of said church, and covenanted "that no building shall be erected on any part of the land surrounding the above described granted church lot within ten feet of said church lot." *Held:*

> I.  That said covenant created a perpetual easement in said ten foot strip of ground in favor of the church lot, for the purpose of light and air.

71 W. Va

II.  That said easement passed by a conveyance of the church lot, and was not extinguished by the conversion of the church building into a business house.

III.  That so long as the easement is useful to the dominant estate, the owner thereof may enjoin its infringement as a private nuisance.

POFFENBARGER, P., and MILLER, J., dissenting.

Appeal from Circuit Court, Marion County.

Suit in equity by T. Wilbur Hennen against Thomas A. Deveny.  From a decree for plaintiff, defendant appeals.

*Affirmed.*

*William S. Haymond* and *A. F. Peddicord,* for appellant.

*Showalter* & *Frame,* for appellee.

WILLIAMS, JUDGE:

The circuit court of Marion county perpetually enjoined defendant from erecting a building on his lot, within ten feet of the line of plaintiff's lot, holding that plaintiff had an easement upon said strip of ground; and defendant has appealed.

In the year 1857, James Burns, being the owner of a lot of ground in the town of Fairmont, conveyed to certain named trustees of the Methodist Episcopal Church 40x70 feet of it, fronting on Adams street; and covenanted with said trustees, "and their successors in office that no building shall be erected on any part of the land surrounding the above described granted church lot, within ten feet of said church lot."

. By proper proceedings had in court a decree was made authorizing said trustees to sell and convey the church lot and building; and, pursuant thereto, they sold and conveyed it to plaintiff by deed dated February 10, 1911.  They also expressly conveyed "all such rights franchises or easements, *vested* in said first parties (the grantors) in and to that certain space of ten feet situate immediately adjacent to the said church lot."  A few months after he had granted the church lot, Burns granted to the "Fairmont Male and Female Seminary," a corporation, the adjacent lot, and excepted from the latter deed "that part of said lot and the privileges thereto annexed which the said James Burns and wife have this day conveyed to the

trustees of the M. E. Church of the U. S. A." By a number of *mesne* conveyances, that lot has passed to the defendant, the immediate deed to him being made in 1895.

Did the covenant by Burns with the trustees of the church create an easement in the ten foot strip of land adjacent to the church lot, which became appurtenant to it; in other words, was the covenant real, or only in gross? Defendant's counsel contend that it is personal with the trustees, and their successors in office, and is limited in duration to such time only as the lot is used for church purposes. But there is no such limitation in the language of the covenant, nor are there any words in any other part of the deed indicating a purpose to so limit it; and the well established rule is, that if the covenant benefits the land to which it relates, and enhances its value, the easement created by it becomes appurtenant to the land, and passes with it. *Lydick* v. *Railroad Co.,* 17 W. Va. 427; Washburn on Real Property, sec. 1205.

If the language of a covenant is unambiguous, and its meaning is not restricted by any other terms or provisions in the deed, its character, *i. e.,* whether real and running with the land, or only in gross, is to be determined from the language of the covenant alone. It is only when the intention is doubtful that the courts can resort to technical rules of construction to ascertain it. *Killian* v. *Harshaw,* 7 Ired. L. 497 (29 N. C.). The words of the covenant are the primary source from which the intention must be gathered. 8 A. & E. E. L. (2nd ed.) 86. There is nothing in the language of Burns' deed to the trustees of the church which, in the slightest degree, indicates a purpose to limit the duration of the easement. The covenant was intended to give light and air, not only to the church building then on the lot, but also to any other building needing light and air that might be erected in its place. *Phoenix Ins. Co.* v. *Continental Ins. Co.,* 87 N. Y. 400. It created an easement in ten feet of the adjoining lot for the benefit of the church lot; it is an *incorporeal hereditament,* appurtenant to the church lot and passed by the deed of the trustees to plaintiff. But, to make assurance doubly sure, plaintiff had an express assignment of the easement inserted in the deed. Notwithstanding it is entitled to little, if any, weight, in determining the legal

question involved, yet it is proper to mention the fact, as showing want of equity in defendant's contention, and that is, that in every one of the numerous deeds forming defendant's chain of title, from Burns down to himself, and there were eight or ten of them, it is expressly stated that "no building shall be erected on any part of said land hereby conveyed within ten feet of the lot of the Methodist Episcopal Church, without the consent of the legally constituted authorities of the said Church." The last clause of this restriction does not signify any purpose to make the covenant a personal one, because an owner of the dominant estate may at any time release any right appurtenant thereto.

Presumably defendant paid no more for his lot than it was worth, subject to the easement. He can, therefore, claim no equities in aid of his legal right. The open space was evidently intended to furnish light and air, as no other use, apparently, could be made of the strip of ground by the owner of the dominant estate. Light and air are as essential to the enjoyment of a dwelling or business house, as they are for the use of a church building, and perhaps more so, for the reason that church buildings are usually occupied for a short time only, and between long intervals, while a dwelling house is occupied continuously, and a business house during the business hours of every work day.

Plaintiff alleges that he is converting the church building into a business house and "that he desires to preserve the windows in said building, in the present location and to preserve all his present rights as to light and air." This averment, which is admitted in the defendant's answer, shows clearly that the space for light and air is beneficial to plaintiff's lot. If it appeared that the open space was no longer useful to the dominant lot, or that the owner of it had abandoned his right to the easement, as for instance by erecting a building without any openings in the wall toward the open space, equity would, no doubt, refuse to enforce the covenant. But the very reverse of an intention to abandon is here shown; and it appears that the easement is still beneficial to the lot, notwithstanding the change of its use. There is no doubt of plaintiff's right to compel defendant to obey the covenant.

A similar case to this is *Salisbury* v. *Andrews,* 128 Mass. 336. There two tenants in common of a large lot laid it out into building lots with an open court between them; later, in deed of release and partition between them, it was agreed that the court should always be left open for a passage way, or court, for the common use and benefit of the lots. Many years thereafter, a subsequent owner of some of the lots commenced to build a bridge, or passage way, across the court about seventeen feet above the ground, connecting two of the buildings. The owners of the other lots, fronting on the court, brought a suit to enjoin him from erecting the bridge and prayed for the removal of so much of it as had already been built. The defendant answered and denied that plaintiffs had any right to the court, except the right of way over it, and denied that this right of way was or would be obstructed by the bridge. But the court held that the easement was intended as well for light and air for the benefit of each and all of the lots, as for right of way, although the former purpose was not expressly named. It also held that such right was an appurtenant which passed with the respective lots, and that the erection of the bridge was an infringement of such right and constituted a private nuisance, giving plaintiffs the right to have it abated.

*Phoenix Ins. Co.* v. *Continental Ins. Co.,* 87 N. Y. 400, is another case in point, supporting the view which we have herein expressed. There, one Howland was the common source of title. He conveyed a lot, adjoining one retained by himself on which had been erected a building. His grantee covenanted not to erect any building on a strip of ground, 8x35 feet, adjoining the line of the lot retained by grantor, and also agreed that if he should violate the covenant, he would pay the grantor, his heirs, executors and assigns a sum of $1,500 as liquidated damages. By successive conveyances, titles to the two lots passed, respectively, to the parties litigant; and the question presented in the case was, whether the owner of the servient lot had the right to discharge the covenant by paying the $1,500. The court held that the option, to discharge the covenant, belonged only to the owner of the dominant estate, and that he, not agreeing to accept it and release the easement, had a right to enforce the covenant against the owner of the

servient lot. In its opinion, at page 407, the court says: "But passing from the consideration of the language of the covenant alone, and construing it, in connection with the circumstances, the conclusion is we think irresistible, that the prime motive of the covenant, was to secure the space in question, in perpetuity, as an open area, for supplying light and air to Montague Hall (then standing on the unconveyed land of the grantor), or to any subsequent building, which might be erected in its place. The building known as Montague Hall, was four stories high on Court street, and three stories high in rear. The northerly wall, abutted on the strip of land in question, and in the part of the wall adjacent to the strip, were windows, which supplied light and air to the three rear stories of the building, and for which there was no other provision. The premises were valuable, and likely to become more so. The court was clearly justified in finding that it was the intention of the parties by the covenant in question, to secure in permanence, the very condition of things covenanted for, viz.: an open space adjoining, and for the benefit of, the unconveyed premises of the grantor. It is not reasonable to suppose that it was intended that the covenantor might at his election break the covenant, on payment of the stipulated damages."

*Brew* v. *VanDeman,* 53 Tenn. 433, is also a case very similar to the one in hand. In that case, it appears that one Kaylor had conveyed to plaintiff a lot on Market street in Chattanooga, one line of which lot ran from Market street, eighty feet, to the post office building, and paralleled the line of grantor's lot leaving a strip of ten feet between them. The grantor covenanted "to leave open forever, for the public convenience and the use of the adjoining lots, the walk, ten feet in width leading from said street to the entrance of the post office building." Plaintiff had erected a large, brick building upon his lot, having doors and windows opening upon this walk, or passage way to the post office building. VanDeman and Dowling purchased of Kaylor the other lot, erected a building along the line of it, bordering on said passage way, and were about to erect a balcony in front of their building, overhanging the passage way, and were also about to erect a stairway on the outside of their building, leading to the balcony. The court

held that plaintiff, and the public, had a right to the unobstructed use of said passage way, for its entire width, length and height; and enjoined defendant from erecting the balcony and stairway.

In *Herrick* v. *Marshall,* 66 Me. 435, the same question was decided. There, it appears, one Murray owned two lots. He had built a house and lived on one of them, and in March 1873 he conveyed it to the plaintiff. In 1864 he had conveyed to one Smith the adjoining lot, and put in the deed to Smith the restriction, "that no building hereafter erected on the above lot shall be erected within ten feet of the easterly line of the said Murray's house lot." The Smith lot came to be the property of defendant. It also appears that neither the plaintiff nor the defendant had any actual knowledge of the restriction put upon the use of the Smith lot, until after defendant had partly completed a building upon his lot, which came within two feet of plaintiff's line, notwithstanding the restriction was noted in the various deeds by which they had acquired title. That was an action on the case to recover damages for the infringement of an easement, and the court held that he was entitled to recover. The agreement was held to create an easement on the lot which Murray first granted, in favor of the lot which he retained, and the benefit to the one, as well as the burden to the other, passed with the respective lots.

We find no error in the decree appealed from and it will be affirmed.

*Affirmed.*

POFFENBARGER, PRESIDENT, *(dissenting)*:

I am unable to concur in the opinion of a majority of the court or the resultant decision, and would reverse the decree, dissolve the injunction and dismiss the bill.

In the situation of the parties, the surrounding circumstances as disclosed by the deeds and extrinsic evidence, there is a strong indication of the purpose of these restrictive covenants. A new church had already been erected on the lot conveyed to the trustees and there are peculiar and special reasons for vacant space around a church or place of worship, not applicable to business or residential property. Public and quasi

public buildings, other than hostelries are rarely connected with other buildings, but business houses are nearly always so connected and residences often immediately adjoin others as well as business structures. Hence there was a special reason or purpose, almost universally recognized in like or similar situations, for the insertion of these covenants, and their insertion for the accomplishment of that purpose impliedly negatives intent thereby to subserve or accomplish others. Separation from the noises and other incidents of occupations for residential and business purposes, and unusual amounts of light and air are essential to congregations assembled for worship, schools, courts and similar bodies. The property benefitted by the restrictive covenant was at the time of the conveyance dedicated to church purposes. No doubt there were several windows in the side of the building next to the residue of the lot and possibly in the rear. In width, the church was co-extensive with the lot on which it stood, leaving no room for light in case of the erection of a structure on the adjacent lot, covering it to the division line. The lot was conveyed to the trustees and "their successors in office forever in trust for a house or place of worship." Presumptively both grantor and grantees contemplated permanent or long continued occupation for such purposes. The covenant is not expressly made in favor of assignees of the grantees. Though this omission was not essential to pass title to them, it is a circumstance bearing on the question of intent. The circumstances all considered indicate purpose and intent to prevent the erection of any buildings on the ten foot strip adjacent to the church lot as a means of securing to the congregation using the property for church purpose privacy and freedom from molestation or interruption and sufficient light and air. The assumption of the deed by its terms of permanency in the use of the property for worship implies intent to protect it in the manner provided by the covenants while used for that particular purpose and impliedly negatives intent to give such protection in the event of an alteration or diversion of the property to purely private purposes. As that use has ceased, the covenant has, according to the true intent and purpose of the parties, ceased also. The reason for its insertion in the deed no longer exists.

The interpretation of covenants such as this falls under the general rules, applicable to contracts, the object of which is ascertainment of the true intent and meaning of the parties. It was optional with the parties to this covenant to annex it generally to the church lot for all of its purposes, and thus make it a covenant running with the land into the hands of subsequent purchasers, or make it special for the better effectuation of a certain purpose. In the one case, the appellee would have the benefit of it, and, in the other, it would be a covenant operative only in favor of persons holding the church lot and using it for religious worship. Nothing in the deed says the covenant shall operate after the cessation of the use of the church as a place of worship. As to whether it shall or shall not, the covenant is silent except by way of implication arising from its general terms. This implication, however, is met and opposed by another arising from the failure to secure the benefit of the covenant to the assigns of the grantees. In view of this, the general situation and purpose indicating intent to give the covenant a limited operation must control.

In my opinion, the plaintiff's case fails for another reason. The altered condition of the property renders it impossible any longer to make this covenant accomplish the purpose for which it was intended. Obviously, it was put in for the protection and promotion of religious worship. Its presence there for that purpose argues that it would not have been put in the deed had the property been sold for other purposes. That use having ceased, the covenant would no longer operate according to its intent and spirit. The enforcement thereof would impose upon the defendant a burden wholly disproportionate to the benefit resulting to the plaintiff. Under such circumstances courts of equity, in the exercise of their discretion, refuse to enforce covenants restricting the use of property, and leave it to the courts of law to give redress for the breach, if any, in the form of damages. *Robinson* v. *Edgell,* 57 W. Va. 157; *Trustees* v. *Thatcher,* 87 N. Y. 311; *Page* v. *Murray,* 36 N. J. E. 331; *Ameriman* v. *Deane,* 132 N. Y. 355, 28 Am. St. Rep. 584; *Robertson* v. *Railroad Co.,* 151 Mass. 525, 32 Am. St. Rep. 482.

Both the interpretation of the covenant, limiting its benefit

to the use of the property for church purposes, and my opinion that a court of equity will not enforce it under the circumstances, even though it run with the land, are sustained by the application of the rule of strict construction in the interpretation of such covenants, because restriction of the use of private property is opposed to general public policy.      11 Cyc. 1077.

The authorities cited in the majority opinion do not seem to be applicable.      In *Phoenix Ins. Co.* v. *Continental Ins. Co.,* 87 N. Y. 400, the building on the part of the property made the dominant estate by the covenant was a private building likely used for ordinary business purposes, though the opinion fails to indicate its use or character at the date of the conveyance.      Had the circumstances indicated a special purpose, as they do here, they would probably have been mentioned in the opinion.      In *Salisbury* v. *Andrews,* 128 Mass. 336, the covenant provided a court and driveway for adjacent property without reference to its use, though it seems to have been residence property at the time and to have remained such. *Brew* v. *Van Deman* 53 Tenn. 433, involved a covenant to keep a strip of land "open forever for the public convenience and the use of the adjoining lots." *Herrick* v. *Marshall,* 66 Me. 435, involved an easement for the benefit of a residence and the character of the property remained unchanged.      Thus the mere statement of the facts in these cases shows their inapplicability here as precedents.

The Massachusetts case relied upon states the rule of interpretation of such covenants as I understand and apply it.      The court said: "Where the language used is of doubtful import, and where the precise purpose and intent of the parties is not expressly defined in words, the facts and circumstances surrounding the transaction, 'such as the actual condition and situation of the land, buildings, passages, water-courses, and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense, in which particular words were probably used by the parties, especially in matters of description,' are always proper to be considered."