# CHARLESTON.

## M. M. & D. D. BROWN, PARTNERS v. WESTERN MARYLAND RAILWAY CO.

### Submitted May 6, 1919.   Decided May 20, 1919.

1. SPECIFIC PERFORMANCE—*Contract by Railroads—Public Duties.*

   A railroad contract stands upon no higher or different plane than the contract of any other corporation or individual, and the same principles apply to and govern all of them alike, except, however, that equity may decline to exert its coercive power to compel specific performance of such a contract if to do so will adversely affect the performance by the railroad company of its full public duties.   (p. 275).

2. SAME—*Contracts—Breach—Legal Remedies—Damages.*

   The normal end or termination of every contract is performance in accordance with the terms of the agreement, and such a consummation should be the presumptive one, resort to the legal remedy being had only when the circumstances are such that it is more equitable to compel the obligee to accept damages in lieu of what he contracted for than to compel specific performance of its terms.   (p. 275).

3. SAME—*Railroad Contract—Public Duties.*

   Where a railroad company, for a valuable consideration, enters into an oral agreement, complete in its terms, to construct and maintain a yard switch track of a specified length, and to permit the other contracting party to store lumber on its property, and the latter relying upon the promise of the company forbears to remove his plant to another locality, as had been his intention, and incurs great expense in improving his property for use in connection with the advantages of the switch, and otherwise performs his part of the agreement, and with the knowledge and consent of the company stores his lumber on its property, and the breach of the promise results in an injury that cannot be compensated adequately in damages, equity may enforce performance of the agreement to construct the spur track, and restrain interference with plaintiff's storage privileges on its property, so long as such decree does not seriously affect performance by the railroad of its full public duties.   (277).

4. CONTRACTS—*Obligation—Consideration—Nature.*

   The extent of the duty created by a contract is not determined

by the kind of consideration on which it is based. It is sufficient
if the consideration is such as the law deems valuable without re-
gard to its nature or character. (p. 278).

5.  FRAUDS, STATUTE OF—*Injunction—Part Performance—Railroad's*
    *Contract for Storage.* ·

    Where a railroad company, as part of the consideration for an
    oral contract, agrees to permit another to store his lumber on its
    property, and the latter exercises that right with the knowledge
    and consent of the company, and otherwise fully performs his part
    of the agreement, such part performance removes the bar of the
    statute of frauds, and equity will restrain interference with the
    right of storage, subject to termination, however, when the land
    becomes necessary for the proper discharge of the company's du-
    ties to the public. (p. 278).

6.  SAME—*Performance Beyond a Year.* ·

    An agreement which does not, by its terms or by necessary im-
    plication, carry its full performance beyond a year need not be
    in writing. p. 279).

Appeal from Circuit Court, Randolph County.

Bill for mandatory injunction by M. M. & D. D. Brown
against the Western Maryland Railway Company. From a
decree dismmissing the bill on demurrer, plaintiffs appeal.

*Decree reversed, demurrer overruled, injunction reinstated,*
*and cause remanded.*

*W. B. & E. L. Maxwell,* for appellants.
*E. A. Bowers,* for appellee.

LYNCH, JUDGE:

Judged by the prayer of the bill, dismissed on demurrer,
of which action plaintiffs complain, the chief objects of this
suit were to obtain a mandatory injunction to require de-
fendant, by way of enforcement of an oral contract, to ex-
tend one of its yard side tracks about 800 feet, the cost and
expense of which plaintiffs contracted to pay upon the condi-
tion hereinafter noted, and to furnish the railroad ties neces-
sary therefor; to enjoin defendant from carrying into exe-
cution its announced purpose to cause the removal of lum-
ber stacked on its property with defendant's consent and ap-

proval pursuant to such contract; and for general relief. The court justified its decree upon the ground that equity will not entertain jurisdiction to enforce the specific execution of a contract for the performance of work the supervision of which requires the exercise of professional skill and judgment. Thus there is presented the one main question whether a court of quity can and should require defendant to extend its side track, which it contracted to do, where plaintiffs, acting in good faith with the consent and upon the direction of defendant's agents, have in part done what the contract authorized them to do.

These are the main facts upon which plaintiffs predicate the claim for the relief which they seek. The plant operated by them and located in or near Elkins, Randolph County, for the manufacture of lumber from timber owned by them was destroyed by fire April 6, 1912, and they contemplated the removal of the establishment and the erection of a new plant on the tract of land containing the timber, located on Shaver's Fork of Cheat River, when they began the negotiations which culminated in the contract in question. The consideration for the contract, the terms whereof, frequently reiterated, are stated with sufficient precision to permit an intelligent understanding of what is alleged, is that if plaintiffs would rebuild their manufacturing plant on the former location, pay $5.50 for each car load of logs hauled by defendant from Meadows, a station on its railroad, to Elkins, and if plaintiffs and others affiliated with them, in other business enterprises would permit defendant to carry to market at least three-fourths of their manufactuured product, the charge therefor not to exceed the freight rates demanded by other carriers for a like service, defendant on its part agreed and promised, the bill alleges, to provide cars necessary and suitable to haul, and to haul, plaintiffs' logs from Meadows and deliver them at Elkins at the rate per car specified therein for each loaded car, as heretofore stated; to permit plaintiffs to use certain designated portions of land owned, possessed or controlled by defendant for lumber storage purposes, and also

to extend their dock and trucks from the mill on the south side of the railroad, by way of and under the railroad bridge across Valley River, onto the north side of the railroad to facilitate storing of the lumber so manufactured; and defendant further agreed to extend its yard side track or switch near its freight depot 800 feet along the river bank, the plaintiffs to furnish the cross ties therefor and pay defendant the cost of such construction, including labor and material, other than the ties, as estimated or otherwise ascertained after the completion of the work, with interest thereon, the amount so paid to be refunded by defendant at the rate of $2.00 for each car load shipped by plaintiffs and hauled by defendant; and other reciprocal terms, conditions and stipulations of a similar character not now necessary or important to note or recite.

With the terms, performance whereof was the basis of the agreement on the part of the plaintiffs, the bill alleges full and complete compliance. They did reconstruct and enlarge the buildings and again put them into successful operation and effect on the former site and location, equipped with machinery, appliances, accessories and conveniences necessary, adequate and usual to accomplish the purpose of such business enterprises and undertakings, and to achieve that end were compelled to expend large sums of money for labor and material. For the same purpose and upon the invitation and by and with the consent of the defendant they also built the dock and other structures connecting the plant with the ground owned by defendant on the opposite side of the railroad track, and since have used the ground as place for the storage of the lumber preparatory to its sale and shipment to market. All this they did, the bill alleges, in reliance upon the express stipulation of the contract by and with the knowledge, advice and consent of the defendant duly given by its legally constituted and authorized agents.

Excepting the extension of the side track or switch specified in the contract, of the nonperformance of which complaint is made, plaintiffs waive compliance by defendant with

the terms thereof, thus leaving for consideration upon this review the right to enforce compliance with the stipulation regarding the extension of the side track or switch, together with the restraint sought to be imposed against defendant's threatened removal of the lumber so stored and the buildings and structures so erected by plaintiffs on defendant's ground.

Defendant questions, first, the sufficiency of the allegations to show any contract whatever between the parties; second, if sufficient for that purpose, the contract was to be reduced to writing and signed by them before it was to be deemed binding upon either of them, and that it was not executed; third, the contract is not enforceable because not in writing and not signed by either of them, and hence void under the statute of frauds; and further because plaintiffs have an adequate remedy at law.

The first points of objection are met by the specific declarations of the bill, which, being well pleaded and pertinent, sufficiently show the culmination of the negotiations in an agreement having the essential elements and ordinary requisites of a valid contract. The reciprocal and mutual engagements of the parties towards each other furnish ample consideration therefor, and that the agents of the defendant had ample authority to bind it, and undertook to and did so, is averred unequivocally, and by the demurrer that authority is admitted. Though, as the bill admits, the terms of the agreement were to be reduced to writing and the writing duly executed as a memorial of what the parties bound themselves thereby to do, it further charges that at the time of the oral understanding "it was expressly agreed and understood that the minds of the parties had fully met upon every question under consideration and a binding contract was then concluded," though defendant's agent did on that occasion say "that he would have the understanding of the parties reduced to writing for the purpose of preserving a memorial of the agreement of the parties." And the terms were so written and agreed to by the parties, subject to certain modifications likewise agreed to, and the plaintiffs charge "that the said

written memorandum as prepared by the defendant (though never signed) embraces the identical same terms that were agreed upon in the said contract of May 17, 1912," which said agreement "was a complete contract and was in no wise dependent upon that contract being reduced to writing." These allegations of the bill, admitted on demurrer, are sufficient to establish the existence of the contract involved in this suit, with the further fact that plaintiffs and defendant treated the agreement as if it was fully complete in every detail.

It is further contended that this contract is not one which equity will enforce specifically owing to the amount of court supervision which will be necessary, and for the further reason that the remedy at law is adequate. A railroad contract stands on no higher plane than the contract of any other corporation or individual, and the same principles apply to and govern all of them alike. There is this qualification to be made, however, where the specific performance of a railroad contract is sought: Equity may decline to exercise its coercive power in that respect if to do so will injuriously affect the performance by the railroad of its full public duties. *Harper* v. *Virginian Ry. Co.,* 76 W. Va. 788. But where the public rights will not be injured, a railroad company is subject to the same duty respecting its contracts as any other company or an individual.

Underlying every contract is the fundamental conception of exchange, one contracting party offering to exchange services or commodities which he possesses or can control in return for services or commodities not within his possession or control, but which he desires. At the time of entering upon the agreement each expects to receive and render performance according to its express terms, and the contract can never be fully satisfied unless its execution is of that character. Frequently, however ,the circumstances are such that performance in kind is excused, and this is especially true when, with an award of damages, the disappointed party can easily obtain on the market or elsewhere the same or a substantially similar commodity or service that he contracted for.

But when the remedy at law is not thus adequate, equity has full jurisdiction, and in its discretion may exert its inherent power, to compel performance of the obligation on the part of the delinquent obligor. The normal end or termination of every contract is performance in accordance with the agreement, and such a consummation should be the presumptive one, resort to the legal remedy being had only when the circumstances are such that it is better to compel the obligee to accept damages in lieu of what he contracted for than to compel specific performance. Lightly to permit a contracting party to disregard his obligation and compel the obligee to accept, not the thing contracted for, but money damages, is to place a premium upon contractual insincerity. Especially is this true where one party has fully performed his part of the agreement.

Vice Chancellor Sir James Bacon in *Greene* v. *West Cheshire Ry. Co.*, L. R. 13 Eq. 44, 50, well expresses a reasonable view of such a situation in decreeing specific performance of a contract to construct and maintain a railroad siding of specified length. After commenting upon the failure of the defendant to offer a sufficient excuse or suggestion of impracticability or inconvenience of performance of its part of the contract of which plaintiff had performed his, he proceeds: "But what they say is, that the plaintiff may by an action at law recover against them in money such amount of damages as a jury may think he has sustained by their wilful breach of their contract; and that, therefore, a court of equity will not entertain the complaint. I do not understand that the law, as administered in this court, countenances any such defense. * * * It would be a total departure from all principles by which the administration of this branch of the law has hitherto been guided to hold it at the option of a man who has persuaded another to part with his rights upon a specific condition to say: 'I can, but I will not, perform the obligation I have entered into; and instead of keeping faith and honestly fulfilling my promise, I will leave you to take the chances of an action for damages, and reserve to myself the power of endeavoring to defeat your claim; and, instead

of acknowledging your just rights, will compel you to receive instead of. them such a sum as I may be able to persuade a. jury will compensate you for the loss and injury and disappointment which my willful wrongdoing may have occasioned you.' '' A similar result was reached in *Fortescue* v. *Lostwithiel etc. Ry. Co.*, (1894) 3 .Ch. 621, 64 L. J. Ch. 37, where the railroad company had agreed to construct certain accommodation works for the plaintiff.

In this country the authorities generally have reached the same conclusion with respect to contracts for sidings or spur. tracks. *Taylor* v. *Florida etc. Ry. C.*, 54 Fla. 635, 16 L. R. A. (N. S.) 307, 14 Ann. Cas. 472; *New River Lumber Co.* v. *Tenn. Ry. Co.*, 136 Tenn. 661; *Patton* v. *Monongahela St. Ry. Co.*, 226 Pa. 372; *Southern Pine Fibre Co.* v. *N. Augusta Land Co.*, 50 Fed. 26; *Lane* v. *Pacific etc. Ry. Co.*, 8 Idaho 230; Fry, Spe. Perf. (5th Ed.) § 104. The case of *New River Lumber Co.* v. *Tenn. Ry. Co.*, *supra*, is very similar to this. It involved a contract between a timber company and a railroad in which the latter agreed to extend its line to tap timber lands, the agreement to cover a period of twenty-seven years. The court enforced performance of the contract saying: ''Courts of equity do not at this day hesitate to specifically perform contracts for the construction and operation of railroads merely because such contracts are continuous in their obligations and require skill in their execution.'' p. 678.

A similar result has been reached during more recent years in contracts for the operation of trains. The editor of recent editions of Pomeroy's Equity Jurisprudence, and of the treatise on Specific Performance in 36 Cyc says at page 587 of the latter work: ''Beginning with the year 1890, contracts involving the operation of railroads, often of the utmost complexity and extending over long terms of years, or perpetually, have been enforced specifically.'' Numerous cases cited in the note sustain the text.

The authorities in this state relative to the specific performance of railroad contracts are indicative of the trend of courts of equity toward greater latitude in enforcing con-

struction contracts where the only reason urged against them
is the necessity of court supervision. In *Lydick* v. *B. & O.
R. Co.*, 17 W. Va. 427, the authority of a court of equity to
enforce the performance of a contract to construct a switch
was expressly recognized, though the holding seems to be
obiter. *Moundsville* v. *Railroad Co.*, 37 W. Va. 92, holds that
a municipal corporation may compel a railroad company to
restore a street, in which it has located its road, to its former
condition, as nearly as may be, by mandatory injunction.
And *Johnson* v. *Ohio River R. Co.*, 61 W. Va. 141, and
*Harper* v. *Virginian Ry. Co.*, 76 W. Va. 788, enforced spe-
cific performance, the first of a contract to build and main-
tain road crossings, cattle guards, and other structures on the
company's right of way, the other of a contract to build and
operate a depot on plaintiff's land, though not specifying the
length of time.

It is true that many of the cases cited involve contracts
entered into by the railroad company in consideration of the
conveyance by the plaintiff of a right of way through his land.
The consideration here is of a different nature, but of equal
dignity. Besides, the extent of the duty created by a con-
tract is not determined by the kind of consideration on which
it is based. It is sufficient if the consideration is such as the
law deems valuable without regard to its nature or character.

A bill having for its chief object the enforcement of an oral
contract not executed as required by clause 6, ch. 98, Code,
is subject to the challenge of a demurrer, as stated in Hogg's
Eq. Pro. §306, and as appellee contends. But the challenge
becomes ineffective as a cause for dismissal of such a bill
when, by reason of part performance of the contract, to
sanction that course clearly would operate to the manifest
prejudice of the complainant. If in relying in good faith
upon the promises of the covenantor, part of the considera-
tion of a contract, and with the knowledge and consent of the
latter, he extends a vast amount of money, he thereby pro-
duces such a situation as warrants a court of equity in giv-
ing him the relief to which he may be entitled notwithstand-
ing the statutory requirement. Its purpose was to prevent

not sanction fraud. That principle of law or legislative enactment would be an anomaly which, while attempting to prevent fraud, would become an instrumentality for the perpetration of fraud. *Richardson* v. *McConaughey,* 55 W. Va. 546. Here if the agreement to permit plaintiff to store his lumber on defendant's property be construed to be a lease within the meaning of clause 6, ch. 98, Code, the partial performance effected by the storing of lumber thereon removes the. bar of the statutory provision. *Miller* v. *Lorentz,* 39 W. Va. 160. The case of *Pifer* v. *Brown,* 43 W. Va. 412, and other similar cases respecting the revocability of parol licenses, though acted upon by the licensee, have no bearing here, for the permission to use defendant's land was part of the consideration for a contract, and therefore of greater dignity than a mere liecense. But no time having been prescribed for the duration of the right to use the land for storage purposes, the exercise of that right can continue a reasonable time only, and is subject to termination by the railroad company whenever the land becomes necessary for the proper discharge of its public functions.

Again, it is urged that as the statute forbids the bringing of an action upon an agreement not to be performed within a year the provision for the extension of the side track is not enforceable. There is nothing in the contract considered or in any of its terms or provisions which indicates or from which can be inferred a necessity to prolong performance of the work beyond the period forbidden by the statute, or anything inconsistent with complete performance within the one year period. In that event the contract is not within the statutory inhibition, and is enforceable. *Reckley* v. *Zenn,* 74 W. Va. 43; *McClanahan* v. *Otto-Marmet Coal & Mining Co.,* 74 W. Va. 543. Here there is no occasion for the assumption that more than a year is necessary to complete an 800-foot extension of the yard track.

Superfluous, perhaps, is the observation that we are now only testing the sufficiency of the bill on demurrer, and while we think the bill presents on its face a cause for relief, the

case may, when fully matured for final hearing upon bill, answer and proof, show plaintiff not to be entitled to any relief. In the meantime, however, the status quo should be maintained, and to this end we reverse the decree, overrule the demurrer, reinstate the injunction, and remand the cause.

*Decree reversed, demurrer overruled, injunction reinstated, and cause remanded.*